[Civ. No. 6500.   Third Dist.—April 16, 1941.]

ROY SPEAR, Respondent, v. MARIE LEUENBERGER et al., Appellants.

Hoge, Pelton & Gunther, A. Dal Thomson and Mervin C. Lernhart for Appellants.

George E. Maloney and Rutherford, Rutherford & Rutherford for Respondent.

MONCUR, J., *pro tem.*—This is an appeal from a judgment after a verdict by a jury, and after denial of a motion for a new trial, against the defendants and appellants and in favor of the plaintiff and respondent, and is for personal injuries to the respondent alleged to have been sustained in a collision between two automobiles. The collision occurred on Christmas Eve of 1938 shortly before 6 o'clock when it was dark. Appellant Ernest Peters was the driver of one car, a 1936 Lincoln Zephyr automobile. Appellant, Mrs. Leuenberger, was the owner of the automobile and was riding in the back seat. Appellant Peters was employed in taking care of the ranch of his codefendant and drove the car on her behalf. The lights of the Leuenberger car were lighted, including the headlights and tail lights; the weather was clear and the pavement was dry.

Appellants had left Napa and were on their way to the residence of Mrs. Leuenberger, which is on the west side of the Napa-Saint Helena Highway, and were driving in a northerly direction. At a point about opposite from where the collision occurred there was a driveway to the west or leading from the left side of the main highway and to the Leuenberger property, and into which it was necessary for the Leuenberger automobile to turn.

Plaintiff was riding alone, was driving a 1936 Plymouth sedan, and proceeding northerly and behind defendants' automobile.

Plaintiff testified that he first saw defendants' car when he was 300 feet away from it; that he gained on it and pulled up fairly close, and that when somewhere in the neighborhood of 150 feet back from the other car, gave two little toots of the horn and turned his car to the left hand side of the road in an attempt to overtake and pass the defendants' automobile; that during all of this time he was traveling at 45 miles an hour; that when he was 300 feet back from the Leuenberger car, the latter was, in turn 100 feet from the driveway into the Leuenberger property; that when the Leuenberger car was 50 feet from the driveway he was back 50 feet from the Leuenberger automobile; that he traveled 300 feet while the car ahead of him traveled 50 feet; that at this point, 50 feet back from the other car, he saw the car angling across in a left hand turn and about to enter the driveway into the Leuenberger property; that when he saw the car ahead make this left hand turn, he swung his own car to the right and that the car ahead discontinued the left hand turn and got back upon the easterly half of the road, facing north; that plaintiff's car started to skid, with the result that the left rear of his car struck the defendants' car and then turned over; that he saw no arm signal from the car ahead; that he did, however, see the red tail lights flash from the application of the brakes as the car started to make the turn.

Respondent, in his deposition taken previous to the trial, stated that he did not see any signal given by appellant Peters or any signal from the tail light or stop light indicating that the brakes were being applied or the flashing of a red light.

Defendant Peters was called by respondent under section 2055 of the Code of Civil Procedure and testified that 150 feet from the Leuenberger driveway he put out his hand to indicate a left turn; that he also signaled throughout that distance by the use of the foot brake, causing his tail lights to flash; that he came over gradually to the left in a diagonal direction in order to accomplish the turn into the driveway, and that he was back 35 or 40 feet from the driveway when he saw the plaintiff's car; that he was on the right hand side

of the highway when he gave the signal and was traveling between 30 and 35 miles an hour and had already slowed up. His testimony in this respect was as follows: "Q. Now, at that time, when you were at that point there as indicated on the diagram, where you gave the signal, how fast were you going? A. Oh, I think about 30 or so—35. Q. In other words, you had already slowed up, Mr. Peters? A. Yes. Q. Did you give any signal indicating that you were slowing up? A. Yes. Q. In what way? A. In going down from 45 miles to about 20 and 15, 5–6 times with my foot brake on that way (indicating). Q. Is the highway level there at that point? A. Pardon me? Q. Is the highway level there at that point? A. Well, I don't know of unlevel highway; it seems to me all level. Q. How far do you have to press the brake down in order to give a signal with your foot? A. Oh, just about (indicating). How far I have to put my brake, huh? The foot, you mean the distance between the brake and the foot pedal? Q. In order to give a signal without stopping your automobile? A. Oh, I think about an inch or two until I touch, if I feel the brakes. Q. When you do that, doesn't that slow up your car somewhat? A. A little bit, yes. Q. Now, is that the only signal that you gave. A. Now I just told you I held out my hand. Q. I meant the slowing up? A. No, that is my only signal."

Appellant Peters testified that he started to make the turn in the Leuenberger driveway at about 25 to 35 feet before reaching a point opposite the driveway: "Q. You went diagonally across, is that correct? A. Yes. Q. I will ask you this: when you first endeavored to go diagonally across here— A. Yes. Q. —did any part of your, any part of your automobile go on this side, or all of it go on? A. No, not all of it. Q. How much of it went on that side of the highway? Mr. Hoge: The west side. Mr. Rutherford: Yes. The witness: A. I was just exactly about ready to drive into the place. So how much is absolutely over the white line I couldn't tell you, but I should imagine I straddled the white line, and I intended to move over into the place. Q. Do you know whether your left wheels were over the center line? A. I couldn't tell you exactly. I suppose they must have been over at that time; I was ready to drive into the place. Q. Was your hand still out at the time you pulled over to cut diagonally across the road there, preparatory to

making the turn? A. Pardon me? Q. Was your hand still out as you cut diagonally over to make the turn into the driveway of the Leuenberger home? A. Yes; just up to that point, about 35 feet away, about that. Q. Your hand was out? A. My hand was out, was as far as it could go. Q. And it was out up to that time? A. Yes. Q. And then did you take it back in? A. I pulled in my hand as quick as I could, Mr. Maloney, when I did see kind of a shadow— what could you say? Kind of a shadow on my left side coming toward me. Q. How far was that, how far were you away from the driveway when you pulled your hand in? A. I just told you 35 feet. Q. 35 feet? A. Yes; about, maybe —maybe it has been 40 or 45; I don't know for sure, but to my estimation it is about 35. . . . Q. Where was that automobile at that time? A. About 35 feet back—40, 45 feet. Q. About 35 or 45 feet back. A. I didn't know that it was an automobile so by that time,—just a shadow, it was very dusk already by that time.''

Mrs. Leuenberger testified that she saw appellant Peters put out his hand for the left hand turn and that he withdrew it at the time he started to make the turn; that she did not see any lights of an approaching automobile closer than about two blocks, which automobile appeared to have stopped; neither did she hear the noise of any approaching automobile from behind.

The foregoing statements of the evidence are made for the purpose of showing the conflicts in the testimony and to illustrate the contentions of the appellants concerning the alleged misconduct during the course of the trial and in the giving of instructions requested by the plaintiffs and the refusal to give instructions requested by the defendants.

It is contended by appellants that counsel for respondent was guilty of prejudicial misconduct in seeking to establish that the defendant Peters was an unnaturalized alien and a native of Germany. The occurrence which constitutes the grounds of this alleged misconduct is set forth in the following: ''Mr. Maloney. (one of counsel for plaintiff) Q. Mr. Peters, are you a naturalized citizen? A. No— Mr. Hoge. Well— The Witness. A. (continuing)— I am not; and it is my solemn duty, Ladies and Gentlemen,— The Court. Just—. Mr. Maloney: I am not bringing this in—just a minute; Your Honor, I am not bringing this in for the pur-

242

pose of trying to induce the jury. I have a definite reason for asking the question. Now, I suggest that you let me go along this line and in the event it is not— Mr. Hoge. What is your purpose? Mr. Maloney. I think it is going to be a question of impeachment. The Witness. Your Honor,— Mr. Hoge. Impeachment? Ask him whether he is a naturalized citizen? Mr. Maloney. For the purpose of the record. Mr. Hoge. What; what purpose? What type of record, counsel? I think we are— Mr. Maloney. For the purpose of his age. Mr. Hoge. For the purpose of his age? Mr. Maloney. Yes. Mr. Hoge. Well— Mr. Maloney. He testified he was 61 years of age. Mr. Hoge. It doesn't make sense, Your Honor. Mr. Maloney. Yes, it makes sense. The Witness. 61 years. Mr. Maloney. Q. Were you born at Carlsbad, Germany? A. In Carlsbad? Q. Yes. A. May I ask where you got that from? Q. I am just asking you. A. No. The Court: He didn't get it; he is asking you. The Witness. A. No, I am not. Mr. Maloney. Q. Is your middle initial 'H' like in Harry? A. Pardon me? Q. Is your middle initial 'H'? A. No; no, I am sorry. I have three—I have three, my three papers out, I have three papers out and one paper is missing that I can't get, and I have to wait until I get it from my mother's place. I don't seem— can't get my certificate what is needed to get my second paper out; but I think—. Mr. Maloney (interrupting). I had no reference to that— The Witness. I think— Mr. Maloney (continuing)—for the purpose of trying to embarrass you in front of the jury; I apologize. I had a definite purpose. I think you realize— Mr. Hoge. Still I fail to get the purpose. Mr. Maloney. If you want me to explain further, I will tell the jury why. There was a record downstairs of Ernest H. Peters who filed for citizenship papers in 1904, and I thought he was the man at that time who gave his age as 39; I thought he was the party. I had it—the only way I could do was to ask him those questions. Mr. Hoge. In other words, you were trying to prove he was 43; is that it? Well, 39 and 4 are 43. Mr. Maloney. I didn't know; I had to ask the question that way; not trying to embarrass you, Mr. Peters. Mr. Hoge. He wouldn't embarrass you, Mr. Peters. The Court. Then do I understand that all of this age matter goes out? Age and citizenship business both go out then. The Witness. If I

may say— Mr. Hoge. No, that is all right; His Honor has stricken it from the record. The Witness. May I go ahead with my conversation? Mr. Hoge. No, that is all, Mr. Peters. That is our case, Your Honor.''

The trial of this case took place on the 14th and 15th days of March, 1940. At that time the conditions existing in Europe, and particularly in Germany, were well known and, undoubtedly, the court and jury were fully cognizant of the situation existing then and the general feeling in the United States concerning this situation. It is earnestly contended by appellants that the introduction into the case of the question of the nationality of appellant Ernest Peters, and particularly the asking of the question if he was not born in Carlsbad, Germany, resulted in such prejudice to the rights of the appellants that they were thereby precluded from having the fair trial to which they were entitled.

Assuming that impeachment of the testimony of appellant Peters as to his age was material, still the method of procedure adopted was not necessary and is not to be commended. Very easily a proper foundation could have been laid for the introduction of the impeaching testimony sought to be introduced without alluding in any way to the fact that appellant Ernest Peters was not a citizen of the United States, and especially that he was a national of any particular country. However, we are not satisfied that the said occurrence resulted in such prejudice as to affect the verdict of the jury. It is apparent that the court and counsel for all of the parties understood that the whole matter was stricken out, and it is likewise apparent that the jury must also have so understood. There was no request to the court to instruct the jury at that time to disregard the occurrence and not to consider it in any way in arriving at their verdict, but the court did, in its general instruction, direct the jury to disregard any evidence that was admitted and afterward stricken out and to disregard the matter so stricken out entirely, and that if any counsel had asked any questions which the court had not permitted to be answered to disregard such questions and refrain from any inference based upon them; and also that if counsel upon either side had made any statements in the presence of the jury concerning the facts of the case, to be careful not to regard such statements as evidence

and to look entirely to the proof in ascertaining what the facts are.

Nowhere in the testimony as shown in the transcript does there appear any reference whatever to the question of the nativity of any person connected with the case except in the instance hereinbefore referred to in connection with the attempted impeachment of Ernest Peters; and also there is no showing on the motion for a new trial concerning this matter, either by way of affidavits or otherwise, though the matter of the claimed misconduct is one of the grounds of the motion for a new trial.

▓ We think, therefore, that a determination of the claimed misconduct rests upon the principles stated in the case of *Walling* v. *Kimball*, 17 Cal. (2d) 364 [110 Pac. (2d) 58], decided February 17, 1941. Therein at page 368, the court said: ''The entire controversy and every issue here set up as misconduct were before the trial court upon the motions for new trial and the affidavits filed by respective counsel in support thereof and in opposition thereto. Upon the issues thus raised in the trial court, the court decided that there had been no prejudicial misconduct, and this was a finding of fact which the trial court was justified in making when the motions for new trial were denied, for all of the matters of which complaint is made also took place in the presence of the trial judge, who was in the best position to observe the demeanor of the parties and to gauge any possible effect it might have had upon the jury. In the leading case on this subject, *LaFargue* v. *United Railroads*, 183 Cal. 720 [192 Pac. 538], this court said at page 724: ''The trial court denied a motion for a new trial based upon the ground, among others, of misconduct of plaintiff's attorney. In doing this the court must be deemed to have concluded that no prejudice was suffered by defendant by reason of any of the matters to which we have referred. Conceding some of the statements made by counsel, whatsoever the provocation thought by him to exist therefor, were improper, we are satisfied that this conclusion of the trial judge should not be disturbed by an appellate court. The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be

disturbed unless, under all of the circumstances appearing, it is plainly wrong."

The opinion analyzes and distinguishes a considerable number of cases wherein alleged misconduct during the course of trials was involved. At page 370 the opinion concludes as to the particular matter of misconduct as follows: "Conceding that the statements made by respondents' counsel, whatever may have been the basis of his assertion, were improper, we are satisfied that the conclusion of the trial judge, after consideration of these same facts presented by the conflicting affidavits in the course of the argument on the motions for a new trial, should not be disturbed by this court." (See also *Wills* v. *J. J. Newberry Co.*, 43 Cal. App. (2d) 595 [111 Pac. (2d) 346].)

In the instant case, there being no affidavits presented on the motion for a new trial, the showing of prejudicial misconduct is not as strong as in the case of *Walling* v. *Kimball, supra*. From the quoted testimony it appears that in answer to the question asked appellant Peters if he was born in Carlsbad, Germany, his answer was "no". Whether by this answer he intended to deny only that Carlsbad was his place of birth, or that he was born in Germany, there is no affirmative showing that he was a German national. From all that appears to this court, the implied holding of the trial court that these remarks did not constitute prejudicial misconduct was a proper exercise of the court's discretion in denying the motion for a new trial as to that particular ground.

We will next consider the claimed errors on the part of the court in giving certain instructions to the jury at the request of plaintiff and in refusing to give certain instructions at the request of the defendants. An examination of all of the instructions given to the jury discloses that there was no definition of negligence given in any of the usually accepted forms. Plaintiff's instruction No. 24 in the following form was given: "In connection with the obligation under the law of one person to another, you are further instructed that it is the law that every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights, and that everyone is responsible, not only for the result of his wilful acts, but also for an injury occasioned to another by his want

of ordinary care or skill in the management of his property or person, except so far as the latter has, wilfully or by want of ordinary care, brought the injury upon himself. Want of ordinary care is called negligence.''

■ Negligence is usually defined as the doing of some act which a reasonable or prudent person would not do, or the omission to do something which a reasonable and prudent man would do, actuated by those considerations which ordinarily regulate the conduct of human affairs. It is the failure to use ordinary care or skill by one sought to be charged with negligence in the management of his property or person. It is not intrinsic or absolute, but always relates to some circumstance of time, place, or persons. ■ We doubt whether the jury, from the foregoing quoted instruction given to them at the request of plaintiff, received an adequate understanding of the term negligence such as would be required in an action like the one before us. To say that ''want of ordinary care is called negligence'' seems scarcely sufficient.

Neither the terms ordinary care nor proximate cause were defined, and the jury were not told that negligence must be the proximate cause before a liability could be imposed, though in some of the instructions given at the request of the defendants, contributory negligence and want of ordinary care were defined and the jury were told that contributory negligence must proximately contribute to the collision and the injury resulting therefrom.

■ In regard to the alleged errors on the part of the court in instructing the jury, defendants contend that instruction No. 8, requested by plaintiff, should not have been given. Preceding that particular instruction, at plaintiff's request, plaintiff's instruction No. 6 was given to the jury, which is as follows: ''The. Vehicle Code also provides as follows: No person shall turn a vehicle unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein in the event any other vehicle may be affected by such movement.''

Instruction No. 8 is as follows: ''I further instruct you that if the defendant, Peters, turned his vehicle to the left without knowing that such movement could be made with reasonable safety, and then only after the giving of a signal

with the hand and arm extended horizontally beyond the side of the vehicle, then you will find defendant, Peters, was guilty of negligence as a matter of law.''

Appellants contend that by the giving of instruction No. 8 the jury were told that because an accident happened the defendant Peters must be considered guilty of negligence; that the law does not require that he must know, as a positive fact, that the turn could be made in safety; that all that the law requires is that he make the observation of a reasonably prudent man, acting under the same or similar circumstances; and that the instruction enforces upon defendant Peters, and his codefendant, the liability of insurers. While the criticised instruction does not perhaps extend as far, in effect, as is contended, nevertheless, we are of the opinion that it is fairly subject to some, at least of this criticism.

We do not understand it to be the rule that a person is required to know that the turning movement can be made with safety. All that is required is that he take the precautions which a reasonably prudent person would take under the circumstances reasonably appearing to him at the time. In the case of *Ruperto* v. *Thomas*, 113 Cal. App. 523 [298 Pac. 851], at page 526, it is said: ''Section 130 (a) of the California Vehicle Act provides in part: 'The driver of any vehicle upon a public highway before starting, turning or stopping such vehicle shall first see that such movement can be made in safety. . . . '

''This language does not mean the driver of a vehicle may not turn his machine at an intersection of streets unless there is absolutely no possibility of an accident. It must receive a reasonable construction. No specific acts or omissions of the driver of a motor vehicle in changing the course of his machine at the intersection of streets may be characterized as negligent under all circumstances. The negligence of a driver must be determined by an application of the well settled rule of negligence as to what a reasonably prudent person should do under like circumstances. The language of section 130 (a) above quoted should be construed to mean that the driver of a vehicle upon a public highway, before starting, turning or stopping such vehicle must use such precaution as would satisfy a reasonably prudent person acting under similar circumstances that he could do so safely. The question as to whether the conduct of a driver of a vehicle

amounts to contributory negligence under the particular circumstances is a problem for the determination of the trial court or jury.''

In the case of *Ederer* v. *Shanzer*, 134 Cal. App. 137, 139 [25 Pac. (2d) 38], it is said: ''The fact that a collision occurred does not justify the court in holding that the plaintiff before starting forward did not first see that his movement could be made in safety. The subsequent events would indicate that he determined erroneously, but that is the most that can be said.'' In some of the cases cited the collisions occurred at intersections but such fact is immaterial. The application of the legal principle therein set forth is the same, whether applied to collisions at intersections of the highways or under facts as disclosed in the instant case.

From these two instructions it reasonably appears that under instruction 6 one rule is stated which could apply to both plaintiff and defendants, while under instruction 8 defendant Peters was required to know that the turning movement could be made with reasonable safety. This clearly constituted a contradiction. Plaintiff's instruction No. 8 was an incorrect statement of the law and should not have been given and, in our opinion, the giving of it resulted in prejudice to the rights of appellants herein.

In appellants' third assignment of error it is contended that the following instruction, the second paragraph of plaintiff's No. 14, should not have been given: ''I further instruct you that if you find the defendant neglected any duty, or duties imposed upon him by law, or the duties imposed upon him to be generally careful and prudent in the operation of his automobile and that the accident could not have been avoided by plaintiff even though plaintiff had observed all demands of law and good judgment because of the recklessness and carelessness of defendant, then you will find for the plaintiff.''

It is contended that this instruction purported to state all of the conditions upon which liability could be imposed upon the defendants; that it did not contain the necessary element that the defendants' negligence must have been the proximate cause of the accident, and that contributory negligence on the part of the plaintiff proximately contributing to the accident would bar recovery. Also, that the phrase ''all demands of law and good judgment'' does not mean contribu-

tory negligence and could not be taken by the jury to have that meaning. We are of the opinion that this instruction is subject to the criticism stated. ▇ It has frequently been held that instructions of this kind must correctly set forth all of the conditions necessary, that the exclusion of any one necessary element constitutes reversible error, and that even a correct instruction in another part of the charge of a matter omitted from the formula instruction does not rectify the error. (*Beyerle* v. *Clift*, 59 Cal. App. 7, 9 [209 Pac. 1015]; *Pierce* v. *United Gas & Electric Co.*, 161 Cal. 176, 184 [118 Pac. 700]; *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390, 393 [264 Pac. 237].)

▇ The fourth assignment of error is predicated upon the giving of plaintiff's instruction No. 13, as follows: "I instruct you if a sudden emergency arose in this case not due to any fault on the part of the plaintiff, and by reason of the emergency the plaintiff had no time to determine the best course to prevent the impending accident, then the plaintiff would not be chargeable with contributory negligence because he failed to use the best course, and if you find that in the emergency the plaintiff acted as a person of ordinary prudence would have done but the accident resulted nevertheless, plaintiff is not thereby guilty of contributory negligence."

It is urged that said instruction is erroneous for the reason that to be entitled to the benefit of the doctrine of sudden peril the emergency must not have been caused by a person's own negligence; that this instruction does not contain that necessary qualification; and that the failure of the instruction to read in accordance with the law must have worked prejudicial error. Also, that the jury was authorized to absolve the plaintiff from fault, even though the emergency in which he found himself was due to his own negligence. In support of this contention appellants cite the following cases: *Vedder* v. *Bireley*, 92 Cal. App. 52, 60 [267 Pac. 724]; *Brooks* v. *City of Monterey*, 106 Cal. App. 649 [290 Pac. 540]; *Gootar* v. *Levin*, 109 Cal. App. 703, 706 [293 Pac. 706]. In the case of *Vedder* v. *Bireley, supra*, at page 60 it is said: " 'One who, without negligence on his part, is suddenly confronted with imminent danger or seeming imminent danger, is not required to exercise that degree of care and skill which is required in the commission of an act after

careful deliberation; he is required to act only as a reasonably prudent man would act, under similar circumstances.' (19 Cal. Jur. 598, sec. 36.) The imminent peril must arise from a sudden emergency, but where that emergency is created by the automobilist, or where he brought about the perilous situation, through his own negligence, he cannot avoid liability upon the ground that his acts were done in the stress of emergency.''

In *Brooks* v. *City of Monterey, supra,* at page 656, it is said: ''While it is the rule that one who, without negligence on his part, is suddenly confronted with imminent danger is required to act only as a reasonably prudent person would act under the same circumstances (19 Cal. Jur., Negligence, sec. 36, p. 598), the rule can be invoked only by those whose position of peril is not caused by their own want of due care (*Neff* v. *United Railroads,* 188 Cal. 723 [207 Pac. 243]; *Rush* v. *Lagomarsino,* 196 Cal. 308 [237 Pac. 1066]), and where, as here, there was evidence tending to show that decedent's perilous position was due to his own negligence the omission therefrom of this qualification was sufficient ground for the rejection of the proposed instruction.''

In *Gootar* v. *Levin, supra,* at page 706, the following instruction was given: ''You are instructed that if you find from the evidence plaintiff Gootar was at the time and place set forth in the complaint, suddenly put into a position of imminent danger without having sufficient time to consider all the circumstances, he is to be excused for omitting to take some precaution or for making an unusual choice under such disturbing influences, although if his mind had been clear, he might have done otherwise.'' The court then said: ''The foregoing instruction omitted the necessary qualification that the doctrine of sudden peril is available only to a person who is confronted with such peril without negligence on his own part. Where there is evidence tending to show that such person's sudden peril resulted from his own negligence it is error to give such instruction without proper qualification. (*Brooks* v. *City of Monterey,* 106 Cal. App. 649 [290 Pac. 540]; *Vedder* v. *Bireley,* 92 Cal. App. 52, 60 [267 Pac. 724].) The main issue in the case was whether plaintiff's injuries resulted from the negligence of the plaintiff or the negligence of the defendant and the giving of the

foregoing instructions constituted prejudicial error requiring a reversal of the judgment.''

Other instructions were given which it is contended by respondent cured the claimed errors respecting the doctrine of imminent peril hereinbefore referred to, and the recent case of *Ohran* v. *The County of Yolo*, 40 Cal. App. (2d) 298 [104 Pac. (2d) 700], decided August 5, 1940, is among the cases cited in support of this contention. In that case the automobile in which the plaintiffs were riding was proceeding along a river highway. It was raining and the highway was wet and slippery. The automobile in which they were riding skidded and went off of the levee highway into the Sacramento River. No other automobile was involved, and there was no conflict in the evidence respecting the manner in which the automobile was being operated. The question of contributory negligence arose only in connection with the manner in which the automobile was being operated at the time it skidded off of the levee into the river. The claimed error in the instructions of the court in that case consisted of the omission of the element of proximate cause, and also the failure to include in another instruction the element that the situation of imminent peril was created through no negligence on the part of those seeking its benefit. The court held that as elsewhere the jury were fully and accurately instructed upon the matters involved, that if such claimed error occurred it was harmless.

We are of the opinion that the rule to be followed herein is that set forth in the quite recent case of *Ferguson* v. *Nakahara*, 43 Cal. App. (2d) 435 [110 Pac. (2d) 1091], decided March 12, 1941, and wherein at page 442 it is said: ''All instructions of the court are to be considered and construed as a whole to determine whether they contain reversible error. 'If a single instruction omits an essential element of the cause, but is a correct declaration of the law so far as it goes, and the omitted element is correctly given in another instruction, the omission will ordinarily be cured thereby. If, however, an essential principle of law is stated to the jury materially incorrect, this prejudicial error will not ordinarily be cured by a correct declaration of the same principle in another instruction. The giving of instructions which are contradictory in essential elements may warrant a reversal of a judgment for the reason

that it is impossible to determine which charge controlled the determination of the jury.' (*Soda* v. *Marriott,* 118 Cal. App. 635 [5 Pac. (2d) 675].) (See also *Akers* v. *Cowan,* 26 Cal. App. (2d) 694 [80 Pac. (2d) 143].)''

It appears to us that when all of the instructions herein are considered together, the jury were not clearly, sufficiently, and correctly apprised of the law necessarily required to guide them in arriving at a proper verdict, when considered in the light of the sharply conflicting evidence in this case.

The next assignment of error consists of the refusal of the court to give two instructions requested by defendants regarding the duty of a driver of an automobile to refrain from following a car too closely. Both of these instructions appear to be in proper form and, as there was evidence in the case to which they were applicable, we are of the opinion that at least one of the instructions should have been given and that the court was in error in the refusal.

Other assignments of error in the giving of instructions at the request of plaintiff are also urged but we deem it unnecessary to discuss them.

The appellants also contend that the damages were grossly excessive under the evidence in the case. As we are satisfied that the judgment must be reversed because of the errors hereinbefore set forth, we deem it unnecessary to discuss this matter.

We are not unmindful of the rule that we must consider the evidence in the light most favorable to the respondent; that all conflicts in the evidence must be resolved in his favor and that we must draw all reasonable inferences from the evidence in favor of the affirmance of the judgment, but, nevertheless, by reason of the errors hereinbefore set forth, we feel that prejudice has resulted to the appellants and that but for such errors a different verdict might have resulted.

It is therefore ordered that the judgment be, and it is hereby reversed.

Tuttle, J., and Thompson, Acting P. J., concurred.

A petition for a rehearing was denied May 16, 1941, and respondent's petition for a hearing by the Supreme Court was denied June 12, 1941. Carter, J., voted for a hearing.