[Civ. No. 15213. First Dist., Div. One. Sept. 23, 1952.]

MARTIN P. CHRISTENSEN, Appellant, v. DORIS JOYCE HARMONSON, Respondent.

Charles W. Fisher, Augustin Donovan and Louis B. De-Avila for Appellant.

Brown, Rosson & Berry for Respondent.

BRAY, J.—Plaintiff appeals from a judgment in favor of defendant in an action for personal injuries and for damages to an automobile, arising from a collision between two automobiles.

## QUESTIONS INVOLVED

1. Was there any evidence of negligence on the part of defendant and contributory negligence on the part of plaintiff?

2. Were the instructions (a) on driving while under the influence of intoxicating liquor, and (b) on insurance, erroneous?

3. Should this court apply the doctrine of comparative negligence?

## FACTS

Plaintiff was driving southerly on Piedmont Avenue in Oakland, and was in the process of making a left turn at Montell Street, which intersects the easterly side of Piedmont Avenue. Plaintiff testified that, intending to turn left, he stopped at a point in the intersection about 30 feet past its northerly boundary, about 28 feet from its southerly boundary and on his right side of the imaginary center line between the Piedmont Avenue car tracks. He intended to enter a parking lot at the southeasterly corner of the intersection. He made a left turn signal, was pointed in a 45-degree angle headed toward that lot, and stopped west (his right side) of the middle of the street to let defendant pass. He saw defendant's car about 70 or 100 feet away. She, however, drove straight down the middle of the street with her car partly on her wrong side of the street and ran into his car. Two of plaintiff's witnesses testified they noticed defendant's car going down the center of the street at about 40 miles an hour, increasing its speed. Four witnesses testified that defendant appeared to be drunk. She pleaded guilty to a criminal charge of driving on the wrong side of the street.

Defendant testified she was driving north on Piedmont Avenue on her right side of the street. It had been raining and the pavement was wet. She saw plaintiff's headlights about half a block away. She saw no left turn signal. When she was about two car lengths away she became aware that plaintiff's car was making a left turn. She was going about 20 to 25 miles an hour. Assuming that plaintiff would complete his turn, she pulled to the left, only about 2 feet from the straight course. Plaintiff's car was broadside to her and approximately a quarter of it over the imaginary center line. When she saw he was stopped she put on her brakes. Her car skidded into plaintiff's car. She was knocked unconscious. Within approximately two hours before the accident she had three drinks of whiskey, two before and one after dinner. In her deposition she stated she had three or four. She was "very slightly" conscious of any degree of intoxication, although she experienced no difficulty in driving up to the point of the accident. The skid marks made by her car indicate that she was straddling the imaginary center line of the street. They started 82 feet south of the south curb line of Montell Street. For the first 52 feet they were in a

straight line, then they veered to her right in a sort of arc for about 32 feet.

### 1. *Sufficiency of the Evidence.*

■ Of course, we have no way of knowing the basis upon which the jury arrived at a defendant's verdict. Certainly there is ample evidence upon which it could have found defendant negligent. Plaintiff contends that the evidence as a matter of law demonstrates this, and also that plaintiff was not contributively negligent. Although the evidence of defendant's negligence is strong, we cannot say as a matter of law that she was negligent. Nor can we say as a matter of law that plaintiff was not. These were questions for the jury to determine.

■ Plaintiff gave at least four versions of the accident. Immediately after it occurred he stated to the police officer that he was driving approximately 15 miles an hour and on seeing defendant's car approaching he drove to his right as near as possible to the parked cars to avoid the oncoming car, and that just before the collision defendant swerved into the front of his car. To an investigator, the next day, he stated that he was going about 20 miles an hour and as defendant's car approached, he tried to turn to the right but could not turn quickly because one of his wheels was on the car track; that he was not making a left turn but was headed south. The day after that he told the same witness that he was planning a left turn into the parking lot and stopped his car on a 45-degree angle in the center of the street; that a car to the right of defendant's car forced defendant into the middle of the street so that she hit him. At the trial he denied that any part of his car was over the center of the street or that any car forced defendant into him. A police officer testified that two days after the accident plaintiff came to the police department and stated he wished to change his statement regarding the accident, that he was actually making a left turn when it occurred and the reason he denied making such a turn to the officer at the scene was to avoid responsibility for the accident. At a former trial, in his deposition, and on the stand at this trial, his testimony varied as to the position of his car, its angle, how many stops he made, and in other particulars. We cannot say that as a matter of law he was or was not contributively negligent. Defendant's evidence, coupled with the contradictions in plaintiff's testimony and statements, was sufficient to support the implied finding of contributory negligence.

■ Plaintiff contends that defendant in addition to violating sections 501 and 502 of the Vehicle Code, violated section 525, which requires that, with certain exceptions not applicable here, a car be driven on the right half of the roadway, and thereby was guilty of negligence as a matter of law. While it is true that there was evidence that defendant was violating section 525, it was for the jury to determine, first, whether there was such violation, and secondly, if there was, whether it was a proximate cause of the accident. She testified that she was on her right side of the highway; that plaintiff suddenly without warning made a left turn between blocks across her path; that she turned her car to her left assuming he would continue, thinking that she could better go behind his car than in front of it; that he suddenly stopped, whereupon she applied her brakes and her car skidded on the wet pavement. The effect of her plea of guilty to the charge of driving on the wrong side of the road, whether her story was true, and if so, whether she was justified in assuming what she claimed to have assumed, and acted prudently in a moment of peril, were matters for the jury to resolve. Again, it was a jury question whether defendant after first seeing the headlights of the plaintiff's car half a block away was negligent in not again seeing the car until she was about two car lengths away. Likewise whether she violated sections 501 and 502 was also a matter for the jury.

■ Plaintiff further contends that under the last clear chance doctrine defendant is guilty of negligence as a matter of law. This doctrine was not even suggested to the jury, nor were any instructions requested or given on it. It cannot be considered for the first time on appeal. (*Luna* v. *Ames,* 108 Cal.App.2d 546 [239 P.2d 18].)

2. *Instructions.*

(a) Intoxication.

■ As stated, four witnesses testified that defendant was intoxicated. Defendant admitted to having had three drinks of whiskey and being "very slightly" conscious of any degree of intoxication. Thus the issue of her intoxication and its effect, if any, on the proximate cause of the accident was before the jury. The only instruction mentioning intoxication was the following: "The law will not permit the rights of a party litigant in an automobile accident case to be prejudiced by a mere showing that prior to the accident he had partaken of intoxicating liquor. While such evidence may be considered by you in determining whether or not defendant in this case

was in the exercise of ordinary care at the time and place of the accident, you should not allow it to excite in your minds any bias or prejudice against the defendant. Unless such consumption of liquor by defendant affected in an appreciable degree her ability to operate her automobile in a careful and prudent manner, such consumption of liquor taken by itself did not amount to a lack of ordinary care upon defendant's part. Therefore, you must not permit any feeling of bias or prejudice excited by mere evidence of drinking, not in itself amounting to a want of ordinary care, to affect your verdict in this case in the slightest degree.''

It is true that defendant is not to be held liable merely because she drank intoxicating liquor *if* it did not affect her driving in an appreciable degree, nor should that fact bias or prejudice the jury. However, a reading of the instruction shows that the reference to a ''feeling of bias or prejudice'' in the last sentence does not mean bias or prejudice in the emotional sense, but a finding of fact. It says ''. . . you must not permit any feeling of bias or prejudice excited by mere evidence of drinking, *not in itself amounting to a want of ordinary care,* to affect your verdict.'' (Emphasis added.) Thus, the instruction states, in effect, that if the drinking amounted to want of ordinary care, that fact *could* excite the jury's bias or prejudice. There is no place in any jury trial for bias or prejudice. Hence what the instruction meant was that mere evidence of drinking which in itself did not amount to a want of ordinary care should not be considered by them. As an abstract statement of the law this instruction is probably technically correct, but it overlooks the fact that evidence of driving while under the influence of liquor or causing injury while driving while under such influence raises a presumption of negligence and shifts to the defendant the burden of going forward with the evidence to show that such negligence was not a proximate cause of the accident. Section 502 of the Vehicle Code makes it a misdemeanor to drive while under the influence of liquor. Section 501 of the Vehicle Code makes it a crime for any person driving a vehicle while under the influence of liquor to neglect any duty imposed by law in the driving of such vehicle which act causes bodily injury to any other person. In *Johnston* v. *Brewer,* 40 Cal.App.2d 583 [105 P.2d 365], it was held that violation of a section of the Municipal Code of Los Angeles prohibiting a person from appearing on the street in a state of intoxication was negligence *per se.* ''An act or failure to act below the statutory

standard is negligence *per se*, or negligence as a matter of law." (*Satterlee* v. *Orange Glenn Sch. Dist.*, 29 Cal.2d 581, 588 [177 P.2d 279].) Thus driving while under the influence of liquor is presumptively a lack of ordinary care.

The effect of the instruction was to tell the jury that before they could consider the effect of defendant's driving after indulging in intoxicating liquor they must first find that the drinking itself amounted to a want of ordinary care; and yet the combination of drinking and driving (if the jury believed that the drinking caused defendant to be under the influence of intoxicating liquor) itself raised a presumption of want of ordinary care. The instruction did not adopt the standard of care established by the Legislature and did not instruct the jury that violation of the statute constituted prima facie evidence of negligence. While plaintiff offered no instructions to the effect that violation of either section 501 or 502 was negligence as a matter of law, that fact did not justify the giving of an instruction which gave the jury an erroneous idea of the effect of the evidence. In *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157 [195 P.2d 416], the refusal of the trial court to give an instruction which quoted the penal provisions of sections 501 and 502 and then stated a violation of either section constituted negligence as a matter of law, was held by the majority opinion correct, apparently because the instruction informed the jury that the violation of section 501 was a felony. Here, had the court given no instruction at all on the subject of intoxicating liquor, plaintiff could not complain. But the court gave the jury an instruction which in effect did away with the presumption which would immediately attach if the jury found that defendant was driving while under the influence of liquor, an erroneous statement of the law.

This brings us to the question of whether this erroneous instruction was prejudicial requiring a reversal of the judgment. *Stickel* v. *San Diego Elec. Ry. Co., supra,* 32 Cal.2d 157, is pertinent here. There the court held that the proposed instruction on sections 501 and 502 of the Vehicle Code was properly refused. It then stated (p. 169) : "An instruction specifically directed to drunken driving as negligence could have been given but, in the circumstances, the failure of the court to modify and give defendants' proposed instruction does not appear to have prejudiced them." As particularly applicable here, we have paraphrased the following language

of the court by substituting "defendant" for "Mrs. Stickel," the name of the driver there (p. 169): "The jury were adequately instructed in general terms as to negligence, contributory negligence and proximate cause. To assume that they did not consider the question of . . . [defendant's] asserted intoxication under these general instructions would be to attribute to the jury a lack of ordinary intelligence or deliberate violation of duty."

As pointed out above, if the jury believed that defendant was driving while under the influence of liquor, she was presumed to be acting without ordinary care. However, the jury had another question to consider, namely, did that lack of ordinary care proximately contribute to the accident? The jury had before it the evidence of witnesses who said she was drunk and her own admissions on the subject so that the question of whether her drinking contributed to the accident was put squarely before it. Undoubtedly this issue was forcibly argued. It is not realistic to conclude that the jury did not seriously and fully consider the effect of her drinking, nor to assume that had the jury been told that the burden of going forward with the evidence shifted, by reason of the presumption, to the defendant, there would have been any difference in the verdict. There was ample evidence upon which the jury could, and probably did, find plaintiff guilty of contributory negligence. The jury could well have concluded (it is a jury question (*Van Cise* v. *Lencioni,* 106 Cal. App.2d 341 [235 P.2d 236])) that in turning directly into the path of an oncoming car when it was only 75 to 100 feet away, plaintiff violated section 544(a) of the Vehicle Code, which prohibits such turn unless it can be made with reasonable safety and with the proper signal. His contradictory statements as to what he did and where he was at the time of the accident, including his statement that another car forced defendant into his car, and his statement that he had told a false story to the police to escape liability, were sufficient cause for a jury to disregard his entire testimony and to believe that of defendant even though it might have also believed that defendant was negligent. In view of the maze of contradictions in plaintiff's testimony and statements, it is difficult to understand just what plaintiff believes the true facts to be. We cannot say, as required by section 4½ of article VI of the Constitution, that the error in this instruction caused a miscarriage of justice.

(b) Insurance.

 The court, presumably at defendant's request, instructed that the legal position of a defendant who carries public liability insurance in this type of case is no different from that of a defendant who carries no such insurance, and that the fact that a defendant carries such insurance does not relieve plaintiff of the burden of proving liability. Plaintiff assigns this as error. Under the circumstances of this case it was not error to give the instruction. Defendant in cross-examining plaintiff brought out that plaintiff had given a statement to a representative of defendant's insurance carrier and had also visited the office of that company. The representative was called and testified that he was the investigator of the carrier which was "interested in this case," all of this without objection. Plaintiff's counsel in examining plaintiff referred to a statement prepared by the insurance company man, and in cross-examining the investigator brought out that he worked for the carrier and that he went to Officer Weigle to get reports on accidents for his insurance company. Plaintiff does not contend that the instruction is not a correct statement of the law, but contends that it should only be given where *plaintiff* injects the subject of liability insurance into the case. He relies upon *Huetter* v. *Andrews*, 91 Cal.App.2d 142 [204 P.2d 655], which does not support his contention. In that case it is not clear just what the court held. It apparently adopted the following quotation from the appellant's brief: ". . . a voluntary statement by the defendant, with obvious reference to collision insurance and not liability insurance, does not warrant or justify the instruction given." (The exact instruction is not set forth. There, the only reference to insurance was an answer by defendant, when asked as to the damage to his car, to the effect that "the insurance company is the one that has the final analysis on that." (P. 144.) The Huetter case was based on *Bennett* v. *Chandler*, 52 Cal.App.2d 255 [126 P.2d 173], where the refusal of the trial court to give an instruction that the jury could not bring in a verdict against any insurance company was upheld. The court stated that merely asking jurors on voir dire about their interest, if any, in insurance companies, did not indicate the existence of insurance in the case and hence did not require the giving of such an instruction. The court pointed out that in *Dermer* v. *Pistoresi*, 109 Cal.App. 310 [293 P. 78], and other cases listed, the giving of such instruction was proper because the questions

propounded intimated the existence of insurance in the particular case. Differing from the Huetter case, in our case there was considerable evidence from which the jury could have inferred that defendant had liability insurance. Moreover, it appeared in evidence that an insurance company was interested in the case, obviously on defendant's side. While it was first brought out by defendant, it was properly so, because the interest of the investigator in the case was a proper matter for the jury to consider. Had defendant not brought it out in the first instance, plaintiff would have on cross-examination. Plaintiff did not overlook it when his turn came. Where the evidence is before the jury, we can see no reason why the jury should not be properly instructed on the subject, regardless of who brought the evidence out.

3. *Comparative Negligence.*

Plaintiff contends rather ingeniously that in spite of the decisions to the contrary, the rule of comparative negligence has been the law of this state since the adoption of the codes in 1874, and asks us to apply that rule in this case. Unfortunately for him, however, the case was tried on the theory of contributory negligence and no intimation was made in the trial court that the comparative negligence rule should be applied. In view of that fact we see no reason for considering plaintiff's contention in that regard.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 20, 1952. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.