[Civ. No. 8576.   Third Dist.   May 24, 1955.]

HARRIET A. CHAMBERS et al., Plaintiffs and Respondents, v. EMIL SPADA et al., Appellants; TRAVELERS INSURANCE COMPANY (a Corporation), Intervener and Respondent.

Wyman & Finnell and Marvin Finnell for Appellants.

George W. Hauer and J. Adrian Palmquist for Plaintiffs and Respondents.

Leonard, Hanna & Brophy and John A. MacDonald for Intervener and Respondent.

VAN DYKE, P. J.—Defendants have appealed from a judgment rendered against them in the trial court arising out of a collision between a truck-tractor with semi-trailer operated by defendant Stephenson (sued herein as Stephens) and a panel truck driven by decedent, William Chambers. Respondents, Harriet A. Chambers and Ethelyn Chambers Yore, mother and sister of decedent, brought action to recover damages for decedent's death which they alleged had been caused by the negligence of appellants. The cause was tried to the court sitting without a jury.

The accident occurred about 5.30 a. m. on February 18, 1949, and the place of the accident was about one and a half miles south of the city of Turlock in Stanislaus County, on United States Highway 99, a main arterial highway in the

San Joaquin Valley. At this point the highway was divided into two 12-foot lanes, one northbound, one southbound, the division being marked with a broken white line. On each side of the traveled roadway was a 6-foot shoulder and on each side of the highway there were scattered farmhouses located some distance back. Traffic was light. It was dark and there was fog along the highway. Decedent was in the employ of a mortuary establishment whose vehicle he was driving. He was accompanied by a fellow employee, Rex Brunner. They had been sent out to pick up a body, their destination being a farmhouse along the road. In the dark and the fog they had several times failed to locate the farmhouse and were making a fourth try. They were driving slowly, Brunner, a witness for respondents, giving the speed as 15 to 20 miles per hour. As they drove they watched for the farm road which would lead them to the farmhouse. Both vehicles were going north. Appellants' rig was overtaking the panel truck. The farmhouse they sought was located west of the highway and to reach it, when located, decedent would have to drive his panel truck across the southbound lane. Appellants' rig, traveling substantially faster than the panel truck, his speed being given at about 40 miles an hour, was put into a passing maneuver by its driver. He testified that as he overtook the panel truck he determined to pass it and, as a signal of such intention, changed his headlights from low beam to high beam and back to low beam. He moved into the southbound lane and continued his passing maneuver at the speed at which he had been traveling. As he came closer to the panel truck decedent turned that vehicle across the southbound lane. While it was in that lane it was hit by appellants' truck. Decedent was killed.

Appellants assert that the driver of their truck was not negligent and that this is established as a matter of law by the evidence. The contention cannot be sustained. There was evidence of skid marks which could have been taken by the trier of fact as showing a greater speed than that testified to by witnesses. The skid marks left by appellants' truck when its driver applied his brakes to avoid imminent collision, were all within the southbound lane of traffic, and extended for 80 feet. The record is not clear that this meant the rig, which was 60 feet in length, had progressed 80 feet from the point where the brakes were applied, since it does not appear that only the rear wheels had brakes; nevertheless the length

of the skid marks extending 80 feet to the point of collision could be taken as indicating a greater speed than 40 miles per hour. It was a question of fact as to whether or not, under all the circumstances, executing a passing maneuver under the conditions as to visibility which existed was negligent conduct. In addition to this, and of considerable importance, as will be further shown, no audible warning of the intention to pass was given by the driver of appellants' rig. Section 671 of the Vehicle Code requires vehicles to be equipped with a horn kept in good working order and capable of emitting sound audible under normal conditions from a distance of not less than 200 feet and requires of the driver that the horn be sounded whenever reasonably necessary to insure safe operation. That the situation was one which the trier of fact could have held required such audible signal is quite apparent. There is testimony that, due to the darkness and the fog, visibility was very poor, one witness describing it as "practically zero," another saying that one could see about 70 feet. Under such conditions the signal given by the rig's driver, a visual signal, might well have been unnoticed by decedent. The trier of fact could have held the visual signal to have been inadequate. It cannot be said that, even though the decedent missed the visual signal, he would not have been alerted by an audible signal. Decedent's companion, riding in the seat with him, testified he did not see the visual signal and heard no sound. The significance of these considerations is well illustrated in the cases. (See *Cleveland* v. *Petrusich*, 117 Cal.App. 71 [3 P.2d 384]; *Erickson* v. *Grady*, 119 Cal.App. 596 [6 P.2d 1002]; *Young* v. *Tassop*, 47 Cal.App.2d 557 [118 P.2d 371]; *De La Motte* v. *Rucker*, 55 Cal.App.2d 226 [130 P.2d 444]; *Ducat* v. *Goldner*, 77 Cal.App.2d 332 [175 P.2d 914].) We hold that a sufficient case of negligence constituting a proximate cause of the collision appears from the evidence.

Appellants next contend that decedent's conduct as a matter of law constituted contributory negligence. ▆▆▆ In discussing this contention it must be borne in mind that where the alleged negligence of a decedent is at issue and where the evidence concerning the acts and conduct of such decedent must necessarily be produced by witnesses other than the deceased, the presumption that the deceased exercised ordinary care for his own concerns is operative, unless dispelled; that this presumption in a case such as this can only be dispelled by uncontradicted testimony, wholly irreconcilable with the presumption, produced by the party seeking to in-

voke the presumption under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; that this presumption is by statute declared to be evidence and unless dispelled is sufficient by itself to support the verdict of a jury or a finding of a court sitting without a jury, and may outweigh positive evidence adduced against it. (*Scott* v. *Burke,* 39 Cal.2d 388, 394 [247 P.2d 313], and cases cited.) ■ The only testimony in the record as to decedent's conduct, given by witnesses for the respondents, who of course herein rely upon the presumption of due care, was that given by Brunner, the decedent's companion in the panel truck, and by a police officer who was an arriving witness. The officer testified as to the skid marks and as to their location upon the surface of the southbound traffic lane and as to the condition of fog and darkness which he found when he had arrived at the scene. The testimony of Brunner we have already given, but for convenience we will restate it in substance. The panel truck was proceeding slowly 15 to 20 miles per hour. Visibility was bad due to darkness and fog. Brunner himself saw no signal from the truck indicating an intention to pass and was not in fact aware of the truck's approach. The force of the collision was great, sufficient, so he said, to catapult him from the front seat and land him on his back on the floor of the panel truck. Decedent, as he drove along the highway, was, along with Brunner, watching across the road to the west, looking for the farm road. Brunner did not see decedent give any signal to the appellants' driver and decedent's vehicle had no mechanical device for signaling a turn. Decedent was wearing a coat of dark material. After the collision and after the decedent's vehicle had been removed to a garage in Turlock, Brunner observed that the window on the driver's side was up, closing the aperture, and the door had been wired shut by a wire leading from the handle to the back of the seat. When the panel truck was within 10 to 30 feet of the intersection of the farm road with the highway he heard decedent say "there it is." Decedent at once turned his vehicle across the southbound lane and the collision occurred in that lane and almost immediately. Brunner said in substance: We were pretty close to it (the driveway) when we saw it, not over 30 feet; we were traveling under 20 miles an hour; our turn was gradual; we were not almost opposite the driveway when we saw it; we were on an angle; as soon as decedent said "there it is" he began his turn. There is

nothing in this testimony produced by respondents that dispels the presumption of due care. On the contrary, it left that issue one of fact for the trial court. Brief consideration will demonstrate this. Though decedent was looking for the farm driveway that fact does not force the conclusion that he did not, before making his turn, reasonably endeavor to ascertain that the turn could be made in safety. It was his duty to do that under the mandate of section 544, subdivision (a), of the Vehicle Code, which provides that no person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety; and then only after the giving of an appropriate signal in the event any other vehicle may be affected by such movement. ■ This duty to refrain from moving right or left upon a roadway until such movement can be made with reasonable safety means this: "An automobile driver is not required to know that such a movement of an automobile can be made in safety. The requirement is that the driver take the precautions which a reasonably prudent person would take under the circumstances reasonably appearing to him at the time." (*Sunseri* v. *Dime Taxi Corp.*, 57 Cal.App.2d 926, 933 [135 P.2d 654]; see also *Spear* v. *Leuenberger*, 44 Cal.App.2d 236, 247 [112 P.2d 43].) Brunner's testimony does not preclude the possibility that the decedent looked in his rear view mirror and in the darkness and the fog and at a time when the appellants' rig may have been turning left into the southbound lane missed the headlights and did not observe that the truck was overtaking him. Brunner's testimony does preclude the possibility of any signal having been made by decedent so far as a mechanical signal is concerned, but it does not preclude the possibility that he gave a hand signal which by reason of the dark clothes he was wearing, and momentary inadvertence of appellants' driver, was not seen by him. Testimony of an arriving witness that when he came to the panel truck the driver's window was up was not produced by respondents. On this subject of the signal all Brunner said was that he saw no signal given, but he said this while saying that both he and decedent were looking for the farm road. We conclude that the presumption of due care was not dispelled and, therefore, that the trier of fact could find, as it did, that decedent had not been contributorily negligent.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.