[Civ. No. 17008. First Dist., Div. Two. Mar. 20, 1957.]

PAUL ZAMUCEN, a Minor, etc., et al., Appellants, v. WILLIAM L. CROCKER, JR., Respondent.

---

*Assigned by Chairman of Judicial Council.

Barbagelata, Zief & Carmazzi, Arthur C. Zief and Rinaldo A. Carmazzi for Appellants.

Hoey, Hoey, Hall & Conti and Francis Hoey for Respondent.

DOOLING, Acting P. J.—Plaintiffs appeal from an adverse judgment pursuant to a jury verdict in an action to recover for personal injuries.

This action arose out of an automobile collision at the intersection of San Pablo Avenue and Wall Street in the city of El Cerrito on Saturday, September 12, 1953 at about 11:45 p. m. At this point San Pablo Avenue is a four lane highway, with two northerly and two southerly lanes of traffic divided by a concrete island. Appellants Paul, Diane, Ampara and Mary Zamucen were passengers in a car being driven by Nicholas Zamucen. The driver of the car is the father of Paul and Diane who are minors, the husband of Ampara, and the son of Mary Zamucen. He is not a party to the action. At the time of the accident he was driving the Zamucen automobile in a southerly direction on San Pablo Avenue. He collided with the car of respondent William L. Crocker, Jr., as it turned left from San Pablo Avenue into Wall Street.

Respondent Crocker testified that at about 8 p. m. on the evening of the accident he and a friend, one Edith Dausch who is now his wife, went to a restaurant where they had dinner. After dinner respondent and his companion went across the street from the restaurant to a cocktail lounge and bar where respondent had about four bourbon and soda drinks. After about an hour and a half respondent and his companion left this cocktail lounge and drove to a moving picture theater on San Pablo Avenue where they had previously arranged to pick up Mrs. Dausch's son. This was about 11:20 p. m. They parked in front of the theater and talked to the boy for a few minutes and then decided to go to Della's Drive In on San Pablo Avenue to get something to eat. This drive-in is located at the southwest corner of San Pablo Avenue and Wall Street and is approximately eight blocks north of the theater.

Respondent estimated his speed to be about 20 or 25 miles per hour as he drove north on San Pablo Avenue toward the drive-in. When he was about 100 feet from Wall Street he slowed down to approximately 15 miles per hour and continued slowing down as he approached the intersection. The electrically controlled traffic signal was green as he approached Wall Street. Respondent signaled his intention to turn left and then turned into Wall Street. He indicated his intent to turn with a hand signal and with the automobile turn lights. When respondent was about 40 or 50 feet from the intersection he saw the Zamucen car about a half a block down the street coming from the opposite direction. He saw it again just before he made his turn. The next time he saw the car was at the time of impact. The Zamucen car was in the right hand lane of the highway at that time.

The driver of the Zamucen car testified that prior to the accident he was proceeding in a southerly direction on San Pablo Avenue in the right hand lane at a speed of about 35 miles per hour. His speed was about 30 miles per hour when he was about one or two car lengths from the beginning of the intersection. At this time respondent suddenly made a left turn toward him. He applied his brakes, skidded and collided with respondent's car. His speed at the time of impact was about 18-20 miles per hour. He testified that he smelled alcohol on respondent's breath when he talked with him after the collision and that he noted beer cans and an odor of alcohol in the back of respondent's car. He also stated that respondent told him that he was making a U-turn into

Della's restaurant just prior to the collision. Respondent denied this.

A witness to the accident estimated the speed of the Zamucen car at about 40-50 miles per hour at the time of the collision. He admitted that this estimate was based on the squealing of tires heard by him and the condition of the cars after the collision. He also testified that he was within two feet of respondent immediately after the accident and that he did not smell any liquor on his breath.

Appellants' first contention is that the trial court committed prejudicial error in refusing a proper instruction on the legal effect of driving a vehicle while intoxicated.

The trial judge after reading certain applicable provisions of the Vehicle Code instructed the jury:

"Conduct which is in violation of any of the Vehicle Code sections just read to you constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might have been expected from a person of ordinary prudence . . ."

Immediately following this instruction the court gave the instructions on intoxication requested by appellants (BAJI Nos. 152 (1950 Supp.) and 153 (1950 Supp. Pocket Parts) but omitted therefrom the first sentence reading:

"A person who, while under the influence of intoxicating liquor, drives a vehicle upon a public street or highway is guilty of negligence as a matter of law."

The instructions actually given on the subject of intoxication, after striking the above sentence therefrom, read as follows:

"Whether or not a person involved in an accident was then intoxicated is a proper question for the jury to consider in determining his conduct and whether or not he was negligent. However, intoxication is no excuse for failure to act as a reasonably prudent person would act. An intoxicated person is held to the same standard of care as a sober person.

"The taking of one or more drinks of alcoholic liquor is not of itself illegal and does not necessarily constitute negligence. The circumstances and the effect must be considered;

and whether or not a person was intoxicated at a certain time is a question of fact for the jury to decide.

"A person is under the influence of intoxicating liquor when, as a result of drinking thereof, his nervous system, brain or muscle is so affected as to impair to an appreciable degree his ability to operate the vehicle in a manner like that of an ordinarily prudent person in full possession of his faculties, using reasonable care, and under like conditions."

The effect of these instructions, particularly in view of the fact that immediately preceding them was an instruction that certain other conduct in contravention of the Vehicle Code was negligence per se, was to set off driving while intoxicated as not falling in the same category and therefore as not constituting negligence per se. This was clearly error. ■ All of the decided cases on the subject recognize that it is negligence as a matter of law to drive a vehicle upon a public highway while in an intoxicated condition. (*Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157 [195 P.2d 416]; *Guerra* v. *Balestrieri*, 127 Cal.App.2d 511 [274 P.2d 443]; *Mehling* v. *Zigman*, 116 Cal.App.2d 729 [254 P.2d 141]; *Christensen* v. *Harmonson*, 113 Cal.App.2d 175 [247 P.2d 956].)

■ It is not disputed in this case that there was sufficient evidence from which the jury might have found that respondent was driving while intoxicated within the accepted meaning of that term as correctly defined in the last sentence of the instruction on that subject quoted above. (*People* v. *Haeussler*, 41 Cal.2d 252, 261-263 [260 P.2d 8].) That being so it was clear error not to include the sentence stricken from the instruction that driving a vehicle on a public highway while intoxicated is negligence as a matter of law.

The only remaining question on this particular subject is whether this error was prejudicial to the appellants. (Cal. Const., art. VI, § 4½.) In this connection respondent relies on the Stickel case, *supra*, 32 Cal.2d 157, and the Christensen case, *supra*, 113 Cal.App.2d 175, as supporting his position that the error in this respect was not prejudicial.

These cases are both distinguishable on their facts. In the Christensen case the court held that the evidence of plaintiff's contributory negligence was so clear that the error was not prejudicial. (113 Cal.App.2d at p. 183.) In the case before us the jury was correctly instructed that the contributory negligence of the driver of the car in which appellants were riding could only be imputed to his wife Ampara and could not operate as a defense as to any of the other plaintiffs.

The jury must, in bringing in verdicts against the plaintiffs other than the driver's wife, have concluded that the respondent was not guilty of any negligence which contributed as a proximate cause to their injuries.

In the Stickel case the court noted that the instruction as proposed included the portion of the section which made driving while intoxicated a crime. The court pointed out that: "The refusal to instruct as to the criminal responsibility of an intoxicated driver was correct . . ." (32 Cal.2d p. 169.) This was sufficient to dispose of the question since the court is under no duty to reframe an incorrect instruction to embody the correct principle of law suggested therein. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 235 [282 P.2d 69]; *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 162 [265 P.2d 904]; *Tossman* v. *Newman*, 37 Cal.2d 522, 525 [233 P.2d 1].) In our case the instruction refused stated a correct principle of law and therefore the refusal to give it, as distinguished from the failure to modify and give as modified a patently incorrect instruction in the Stickel case, was clearly error.

In determining whether the error in refusing to give a proposed instruction which correctly states a principle of law is prejudicial under California Constitution, article VI, section 4½, we must look to the facts of the particular case.

Here the question of defendant's negligence was a close one on the facts presented and we cannot say that if the jury had been correctly instructed that one who drives while intoxicated is guilty of negligence as a matter of law they might not have found that defendant was guilty of negligence which contributed as a proximate cause to the plaintiffs' injuries.

Appellants' next contention is that the evidence is insufficient to sustain the judgment as to appellants minor children and grandmother. They argue that even assuming that the driver of the Zamucen car was negligent, thus barring any recovery by his wife, the evidence also clearly shows that respondent was negligent. Thus they assert that judgment should be entered in the other appellants' favor. In making this contention appellants point out that there was testimony presented that the skid marks of their car went about 1½ feet past the middle of the intersection. They thus argue that respondent's car was on the wrong side of the street when it was struck and that this constituted negligence per se on respondent's part. However, the same witness who testified

to the skid marks also testified that the point of impact, as recorded on a diagram made by him at about the time of the accident, was closer to the northern portion of the intersection than to the center of the intersection. Respondent also testified that the impact took place in the northern part of the intersection just as the Zamucen car entered the intersection. The jury could have believed that the point of impact was in the northern part of the intersection and that appellants' car continued to move for a few feet after the impact, thus explaining the skid marks beyond the center of the intersection.

Appellants' last contention is that the evidence shows that respondent was negligent as a matter of law in that he did not continue to observe the Zamucen car after starting his turn and that he did not yield the right of way in making his turn. While respondent was required to maintain a reasonable lookout for vehicles approaching from the opposite direction both before starting to make his turn and while making his turn this does not mean that he was obliged to maintain a continuous lookout for vehicles approaching from the opposite direction but only that he was required to maintain a "reasonable" lookout—in other words to use ordinary care. Whether or not in the exercise of ordinary care respondent should have realized that the Zamucen car was an immediate hazard was a question for the jury. (*Chambers* v. *Spada,* 133 Cal.App.2d 231, 236 [283 P.2d 1067] ; *Spear* v. *Leuenberger,* 44 Cal.App. 2d 236, 247-248 [112 P.2d 43].)

For the error in refusing the proposed instruction that one driving while intoxicated is guilty of negligence as a matter of law the judgment is reversed.

Kaufman, J., and Draper, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.