[Civ. No. 14248.   Second Dist., Div. One.   Apr. 28, 1944.]

LAURA LEE WOOD, Respondent, v. ED MOORE et al., Defendants; LAURA AMMONS et al., Appellants.

[Civ. No. 14249.   Second Dist., Div. One.   Apr. 28, 1944.]

NORA SHARP et al., Respondents, v. LAURA AMMONS, Appellant.

Stephen Tighe, C. W. Bowers and Paul Hitch for Appellants.

Stanley A. Phipps, Claire T. Van Etten and Angus C. McBain for Respondents.

YORK, P. J.—The above entitled actions, which were consolidated for trial, arose out of a collision between the tractor truck and semitrailer, owned by plaintiffs Sharp which were being driven by their employee, Ed Moore, and the Ford automobile, owned by defendant Ammons which was being operated by her agent, defendant Hyman.

In the first action, Civil No. 14248, the jury returned a verdict for plaintiff Wood and against defendants Ammons and Hyman for $2,271.01, representing damage done to a sandwich stand, a cafe building and to certain equipment contained therein. The other action, Civil No. 14249, resulted in a verdict for plaintiffs Sharp against defendant Ammons for $3,050.86, as compensation for damages inflicted upon their tractor and semitrailer and for loss of use of such equipment. Defendant Ammons prosecutes a separate appeal from each of the judgments entered in said actions, defendant Hyman joining in the appeal from the judgment in the first action. Since the two appeals present for determination practically identical questions, this court will endeavor to dispose of both in one opinion.

The collision occurred about six o'clock on the morning of March 8, 1942, on Highway 101, where it passes through the town of Saugus, when the driver of appellant Ammons' Ford car in an attempt to make a left-hand turn swung out into the highway from a vacant lot, across the path of respondents' truck which was traveling south transporting a cargo of condensed milk weighing 68,000 pounds.

At the point in question the highway described a long, gradual or "slow" curve to the right to one approaching Saugus from the north. Wood's garage was located on the west side of the highway, immediately to the south of which was the vacant lot from which appellant Hyman started his left-hand turn. Adjoining said lot to the south was a sandwich stand built against the north wall of a brick building housing the Saugus Cafe. The east side of the highway through Saugus is bounded by a railway right of way and tracks, and although there is no intersection at this point, the old Lancaster Road joins the highway a short distance to the north.

Before daybreak on the morning when the accident occurred, appellant Laura Ammons was returning from Wyoming to her home at Ventura, accompanied by her two small children and two young men, one of whom, appellant William O. Hyman, was driving her Ford automobile. They had entered Highway 101 from the old Lancaster Road and had

made a right-hand turn in order to proceed north on the highway; however, because he was uncertain of his directions, the driver turned the Ford around and drove south on the highway to Saugus, where he stopped in front of Wood's garage and talked to the witness Leslie Manning who directed him which way to go. About thirty minutes later, the witness Manning heard the motor of respondents' truck approaching from the north, and when it was within 50 or 60 feet of the center line of the vacant lot, said Manning observed appellant's automobile which had been facing south on the highway, suddenly turn into the vacant lot between the garage and the sandwich stand and make a left-hand turn by swinging out into the highway in a northerly direction toward the Lancaster Road. Said automobile slowed down after entering the highway and came to a complete stop. The approaching truck was too close to avoid the automobile and the left front wheels of the tractor collided with the left rear end of the machine, after which the tractor struck and sheared off a telephone pole near the corner of the sandwich stand; struck the corner of the sandwich stand and rolled to a stop directly in front of the Saugus Cafe in a position facing south partially off the west side of the highway.

The evidence adduced at the trial herein conclusively established acts of negligence on the part of appellants which directly and proximately contributed to the collision and the consequent damage to respondents' property, i. e., driving the Ford during hours of darkness from private property upon and across a public highway in front of the approaching tractor and trailer when the latter were within a distance of 75 to 50 feet; stopping said Ford on the west half of the highway upon which said tractor and trailer were approaching; failure to yield the right of way to the approaching tractor as required by section 553 of the Vehicle Code.

The driver of the tractor testified that the front end of the Ford was out in the center line of the highway at the time of the impact while appellant Ammons testified that when she first saw the truck and trailer, her car was "pulling onto the highway. I think, I believe our front wheels were about two feet on the highway", and the truck and trailer were 70 to 75 feet to her left.

There was substantial evidence to show that for some time before it reached the scene of the accident, respondents' truck

was traveling at 25 miles per hour. The driver Moore testified that under the conditions existing at the time, the tractor and trailer could not have gone over 26 miles per hour. The highway patrolman who investigated the accident estimated the speed of the truck at 30 to 35 miles per hour solely from the skid and tire marks which he observed after the accident. Appellant Ammons, testifying that she did not see the tractor until her automobile was entering the highway when the truck was 75 feet distant, estimated the truck's speed at 45 miles per hour.

The trucking equipment left skid and tire marks approximately 75 feet in length. However, when it is considered that the equipment had an overall length of 47 feet, that the tractor was equipped with three axles and ten tires, and the trailer with three axles and twelve tires, such equipment would need to move only a few feet to create more than 47 feet of skid marks.

As usual in cases of this type, many issues were decided upon conflicting evidence. However, a careful review of the entire record discloses substantial evidence in support of the verdicts of the jury and the resulting judgments.

Appellants' main point in both appeals is that the court erred in its instructions to the jury:

Instruction 43: "Section 543 of the Vehicle Code in effect at the time of this accident *and applicable here,* reads as follows: 'No person shall start a vehicle stopped, standing or parked on a highway nor shall any person back a vehicle on a highway unless and until such movement can be made with reasonable safety.' " Appellants urge that the use of the words "and applicable here" instructed the jury in effect that the Ammons car was stopped on the highway, while this was one of the issues of fact to be determined by the jury. As we read this instruction it simply advised the jury that section 543 of the Vehicle Code, which was in effect at the time of the accident, was applicable to the facts presented by the instant litigation in the event the jury found there was a violation of said section of the Vehicle Code.

Appellants complain because the court instructed the jury as to the prima facie speed laws on the one hand (Veh. Code, §§ 511, 513; instructions 39 and 50) and on the speed law applying to trucks and trailers having a gross weight of 25,000 pounds or more on the other hand (Veh. Code, § 515; instruction 5), urging that by giving these instructions which were contradictory it became impossible for the jury to fol-

low the court's instructions and return a proper verdict. The speed of the trucking equipment was one of the major issues at the trial of these cases and counsel for respondent Wood in case No. 14248 took great pains to establish that the district in which the accident occurred was built up to comply with the 25-mile zone defined by the Vehicle Code and to establish the existence of 25-mile signposts. As heretofore shown, the evidence as to the speed of the trucking equipment was conflicting, therefore, in order to properly instruct the jury upon this issue it was necessary to advise it that the speed of the tractor and trailer in excess of the prima facie limits did not constitute negligence as a matter of law, unless it was in excess of 40 miles per hour, in which event it would constitute negligence as a matter of law.

■ It is next contended that the court's instructions 38, 39, and 50 on sections 510, 511 and 513 of the Vehicle Code created an irreconcilable conflict in the instructions. While the courts have held that the giving of conflicting instructions under certain circumstances constitutes prejudicial error (*Westberg* v. *Willde,* 14 Cal.2d 360, 370 [94 P.2d 590]) in the instant litigation the issue of speed was raised only with respect to respondents' truck and trailer and was never even suggested insofar as the operation of appellants' automobile was concerned. Consequently, if the instructions given imposed a greater burden upon respondents than was necessary, appellants have no cause for complaint in view of the overwhelming proof of their negligence in operating the Ford automobile.

■ In the cases under consideration the trial judge gave voluminous instructions which were proposed by all the parties to the litigation. In such circumstances, as suggested by the following statement in the case of *Inai* v. *Ede,* 59 Cal.App. 2d 549, 555 [139 P.2d 76], ". . . it is an ever present possibility that some particular instruction will fail to contain either a complete or accurate statement of the law. It is but one of the many difficulties where several parties are involved in the same trial. It therefore becomes increasingly necessary to examine the entire charge in the light of fair and reasonable construction, without straining at any particular portion of the language. Then if in the light of such scrutiny it may be reasonably said that the particular inaccuracy or omission or phraseology appears to have been cured by the entire charge and that the jury was fairly and impartially instructed

as to the law, it is sufficient to defeat any claim of error predicated upon defects in particular instructions.''

An examination of the record including all of the instructions given to the jury by the trial judge herein leads to the conclusion that is so aptly stated in the case of *Shuey* v. *Asbury,* 5 Cal.2d 712, 713 [55 P.2d 1160], to wit: ''It is now settled law that a judgment will not be reversed by reason of an erroneous instruction, unless upon a consideration of the entire case, including the evidence, it shall appear that such error has resulted in a miscarriage of justice. The usual consequence is, that there will be no cause for reversal unless the evidence indicates that without such error in the instructions the verdict probably would have been different from the verdict actually returned by the jury.''

With respect to the first of the above entitled actions, No. 14248, appellants urge that the evidence is insufficient to justify the verdict returned therein for $2,271.01 because it represents the exact bid made by the contractor Pollock for reconstructing and repairing respondent Wood's damaged buildings, plus the latter's own valuation on equipment therein contained, including toilet fixtures in the men's rest room and the *cost* of a Neon sign; and that since the said contractor testified that said fixtures were in good shape and did not require replacement, that neither the cost of the sign nor the sum of $50 included in the judgment for the fixtures represents a loss actually sustained by respondent Wood.

At the trial herein respondent Wood testified that ''part of the toilet fixtures are back in—— on a little platform back of the fence in the rear of where the sandwich stand was . . . just sitting there, just old toilet fixtures sitting there, not usable.'' This is sufficient foundation for the implied finding of the jury that the said fixtures valued at $50 were destroyed, despite the statement of the contractor Pollock heretofore recited. With respect to the Neon sign, it is well settled that evidence of cost, uncontradicted by other evidence, is sufficient to support a finding of value. (*Sanders* v. *Austin,* 180 Cal. 664, 666 [182 P. 449] ; *Bacigalupi* v. *Phoenix Bldg. & Const. Co.,* 14 Cal.App. 632, 637 [112 P. 892].)

For the reasons stated the judgments appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.