[Civ. No. 15873. First Dist., Div. Two. June 29, 1954.]

EDMOND F. TRAINOR, Respondent, v. MARGARET M. MAUS, an Incompetent Person, etc., Appellant.

C. Ray Robinson, R. A. McCormick and William B. Boone for Appellant.

B. W. Hirschberg for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of San Francisco after jury verdict in favor of plaintiff and respondent in the sum of $75,000, and against appellant Margaret M. Maus, an incompetent person. Respondent, Edmond Trainor, sustained permanent brain damage and disability as a result of a fall over the banister and onto a concrete areaway below on the premises of an apartment house at 815 South Van Ness Avenue, San Francisco, owned by appellant. The injury was alleged to have occurred because of a dangerous and defective condition of the stairway in that the banister collapsed under the weight of plaintiff as he was descending the stairs, causing him to fall to the concrete areaway approximately ten feet below.

Appellant was sued through the guardian of her estate, Lee Alex MacNicol. A second action filed in the same court by respondent against Mr. MacNicol, individually, and Wilbert J. Clarke as defendants, was consolidated for trial with the suit herein, and motions for nonsuit were granted as to both defendants in the second action. Plaintiff has taken no appeal in that action.

Appellant's two contentions on this appeal are: (1) that the evidence did not establish the liability of the defendant; (2) that it was error to permit plaintiff to amend his complaint during trial to conform to proof by adding to the allegation that the banister "collapsed," the words "gave way, yielded, became loose and broke."

Respondent was an investigator employed by Brown Brothers Adjusters of San Francisco. He was considered a very good man in the business who knew his work well and performed it capably. On November 16, 1951, he went to interview a Mr. Wilbert Clarke, a tenant in appellant's apartment building at 815 South Van Ness Avenue. Mr. Clarke had been a witness to an accident which respondent's employer was investigating. When he finished his business with Clarke he proceeded to leave by the outside front stairway, using the banister for support. Respondent's right hip was somewhat stiff as the result of an injury received playing football

several years earlier. He wore special shoes because of some shortening of the right leg. It was therefore his practice to lean rather heavily on a handrail in descending stairs. His weight at the time was between 180 and 185 pounds.

 Respondent testified that he had descended several steps, he didn't know exactly how many, anywhere from one to two to ten, when he said, "the banister caved, gave or broke, or something." The banister threw him off balance, causing him to fall over it and he landed on his head on the cement below. After the fall he remembered nothing until he regained consciousness in the hospital shortly before Christmas of 1951.

Mrs. Mural Duncanson, a tenant of a basement apartment in appellant's building, testified that she had resided at these premises since May, 1950. She had noticed that the banister railing was loose prior to the accident, and that several of the upright standards above the lower newel post were loose. Later she said that she didn't notice that the uprights were loose till after the accident. The banister had been loose from the lower newel post for more than a year before the accident. She had trouble in using the banister as far up as the point where the mail boxes were fastened to the stairway. The mail boxes were attached to the uprights about half way up the stairs. The banister shifted when she used it for support in going up or down. Below the mail boxes she used the banister gingerly. She testified that on the morning of November 17, 1951, she found respondent's glasses on the areaway below the banister and also discovered blood at the site. She pointed out on the photographic exhibit the spot where she saw the blood and stated that it was larger than her hand. On the morning of November 17 she saw Wilbert Clarke, another tenant, making repairs to the banister. He fastened the banister rail to the newel post and nailed some of the uprights supporting the banister above the newel post. She said that the uprights above the newel post were loose and two at the bottom next to the newel post were missing.

Wilbert Clarke testified that respondent visited him on the evening of November 16, 1951, on business; that on the morning of November 17, 1951, he made repairs to the outside banister of the stairway which led down from his apartment. He hammered some nails into the base of the banister attaching it to the lower newel post and nailed several uprights above the newel post. The banister was torn away from the newel post and the nails were protruding. The banister was

entirely detached from the newel post. He made repairs as high as the ninth and tenth steps. The uprights were loose and could be moved as high up as he made repairs.

Clarke also testified that on the evening when respondent finished his visit, the witness saw him to the door, closed the door after him and started to sit down to read the paper when he heard a thud. He went to the door and saw nothing, so he went back in. It was dusk, and there were no lights on the landing outside the second floor entrance. The closest street light was across the street—that is on the other side of South Van Ness Avenue and about the distance of one house to the south of the premises.

Violet Bernal, who also resided in appellant's apartment house, testified that the premises were not in good repair and that she had never seen anyone make any repairs to the building at any time. As she was leaving the apartment at about 6 p. m on November 16, 1951, she saw respondent standing by the cement pole which is near the gate to the basement apartment. He was holding onto the pole. He did not have a hat or glasses, nor was he holding a brief case. When she returned at about 6:30 p. m. he was still in the same position. He tried to say something to her, but she went on into the building and did not see him again.

John Trainor, a brother of respondent, visited the premises on November 17, 1951, and examined the banister which Clarke had repaired. He stated that the new nails were visible and extended all the way up to the mail boxes which were half way up the stairway. Lee Alex MacNicol, guardian of appellant's estate, stated that he had been so appointed in 1948; that he visited the premises here involved on an average of once in every month or six weeks. His last visit prior to the accident had been on October 12, 1951. The only repairs he remembered ever having made were to a water heater, a tree, and part of the building which had been damaged in the rear by a small fire.

The witness Leon Bernal also saw respondent holding on to the cement pole as he went into his apartment for dinner on the evening of November 16, 1951. About an hour later he was working on a car with his friend Moranda, when respondent approached, told him he was sick, and asked him to drive him home. Bernal saw blood on the back of respondent's head. Eventually, Moranda took Trainor's car and drove him home, Bernal following in Moranda's car. They left respondent in his car in front of his home and departed. At about 7:20

p. m. Mrs. Trainor saw her husband standing by the car with his head down. She went out and brought him in. He was shivering and incoherent. She noticed the laceration on his head and summoned the doctor.

Appellant contends that her motion for a directed verdict and/or for judgment notwithstanding verdict should have been granted, arguing that plaintiff's own evidence established that at all times prior to the accident there was nothing dangerous or defective about the north banister of appellant's stairway. However, the testimony of Mrs. Duncanson, one of the tenants of the premises, reviewed above, is sufficient to establish that the banister of the stairway was in a dangerous and defective condition for a year prior to the accident. She stated that it was loose from the bottom newel post and it shifted when she used it for support as far up as the mail boxes. They are located at the eighth and ninth steps from the bottom of this flight of eighteen steps. The mail boxes are therefore about nine and ten steps from the top of the stairway. Respondent testified that he had taken somewhere between two and ten steps down when the banister shifted under his weight, throwing him off balance and causing him to fall over it to the concrete below. Appellant points out that Mrs. Duncanson was emphatic in her testimony that the banister was firm above the mail boxes; that she located the blood spot on the pavement as behind the twelfth step, and hence respondent could not have descended beyond the sixth step from the top when he fell. The jury may very well have disbelieved her testimony as to the firmness above the ninth step, in view of the numerous photographs showing the condition of the stairway, banister and uprights, which show that the condition was pretty uniform throughout, with the exception that two uprights were entirely missing at the bottom. The jury may also have chosen to believe respondent's testimony that he had descended ten steps, which would bring him well within the area where the banister had been shifting under Mrs. Duncanson's weight for the past year.

Appellant points to certain inconsistencies in the testimony of respondent, but again, it was for the jury to resolve all conflicts and to determine credibility. It is asserted that there is no definite evidence that any defect anywhere in the banister caused respondent's fall. ▮ There can be no recovery where the facts go no further than to establish a possibility that defendant's negligence was the proximate cause of the injury. (*McKellar* v. *Pendergast,* 68 Cal.App.2d 485, 489

[156 P.2d 950].) Appellant speaks of the upper banister and the lower banister as if they were separate objects, saying that there is no evidence of looseness in the upper banister and that the evidence does not show that he ever reached the lower banister, citing *Trembley* v. *Capital Co.,* 89 Cal.App.2d 606, 608 [201 P.2d 398]. However, the evidence, discussed just above, disposes of this contention. The photographic evidence showed that the banister was one continuous beam from top to bottom. It may also be noted that Clarke had time to go into his apartment after closing the door and was about to settle down to read his paper when he heard the thud. If the time elapsed would permit respondent only to descend two steps, the jury might think it rather odd that Clarke's curiosity was not aroused when he looked out on the stairs and discovered that respondent had vanished.

There is testimony by Clarke that respondent appeared very ill to him, that he looked as if he were suffering from a stroke, and that he left hurriedly. Clarke had noted respondent's somewhat crippled hip condition. It is rather incredible that if the testimony as to the illness were true, that the witness would have shown him to the door, saying simply, "Watch your step," and retired within. Clarke's testimony is, of course, in conflict with other testimony that respondent was in excellent health. It was for the jury to resolve all conflicts.

Appellant stresses the fact that witnesses who were tenants of the building testified that the banister was not "collapsed" after the accident. However, the complaint was amended to conform to proof, adding to the allegation "gave way, yielded, became loose and broke." Respondent's testimony was that it gave way or broke or something under his weight throwing him off balance, causing him to fall over the banister. Mrs. Duncanson's testimony also established that the banister had been yielding or shifting under her weight for more than a year before the accident.

Although it is contended that there is no evidence that either defendant or her guardian should have known of any dangerous and defective condition, it may be noted that the evidence established that the defective condition had existed for more than a year. Since the guardian made inspection trips regularly, it may be inferred that the defect had existed long enough for the guardian in the exercise of reasonable care, to have discovered and remedied it. (*Girvetz* v. *Boys' Market, Inc.,* 91 Cal.App.2d 827, 829 [206 P.2d 6].) In view of this evidence it was not the court's duty to direct a verdict

for defendant. Therefore the cases of *Owen* v. *Beauchamp*, 66 Cal.App.2d 750 [152 P.2d 756], and *Reinhard* v. *Lawrence Warehouse Co.*, 41 Cal.App.2d 741, 747 [107 P.2d 501], cited by appellant, are not in point. ▮ Such motions must be denied if there is any evidence to sustain plaintiff's case. (*Turner* v. *Lischner*, 52 Cal.App.2d 273 [126 P.2d 156]; *Seperman* v. *Lyon Fire Proof Storage Co.*, 97 Cal.App. 654 [275 P. 980]; *Deike* v. *East Bay Street Rys., Ltd.*, 7 Cal. App.2d 544 [46 P.2d 812].)

▮ It is contended that it was prejudicial error to permit plaintiff to amend his complaint to conform to proof, by adding after the word collapse, the words ''gave way, yielded, became loose and broke.'' This motion was granted over objection of appellant at the end of respondent's case. Appellant did not ask for a continuance, but proceeded with her testimony. The motion was made, argued and granted outside the presence of the jury. However, appellant claims that she was greatly prejudiced in her defense since she had prepared it on the theory that plaintiff would have to prove a collapse of the banister in order to establish a case. It is to be noted that the complaint alleged that the banister was in a dangerous and defective condition, that the vertical supports were weak, rickety and unsafe for use; that the condition had existed for a long period of time, that as a proximate result of the negligence of defendant the banister collapsed under the weight of plaintiff, causing him to fall.

Appellant relies on *Sanguinetti* v. *Moore Dry Dock Co.*, 36 Cal.2d 812 [228 P.2d 557], wherein it was held prejudicial error to allow plaintiff's counsel, *in the presence of the jury,* to amend the prayer of the complaint to ask for $75,000 instead of $50,000 damages. That case is not in point because here counsel moved the court for the amendment in chambers. Appellant contends that the reasoning of the case applies here, however, since respondent's counsel in his opening and closing arguments to the jury stated that the court had allowed the amendment. In the Sanguinetti case the court also instructed the jury that the amount of damages allowed in the complaint was $75,000. The Supreme Court in the cited case pointed out that the influence of the judge on the jury is of great weight, ''that his lightest word or intimation is received with deference, and may prove controlling.'' Here there was no reference whatsoever to the matter by the trial judge in the presence of the jury.

■ Allowance of amendments to conform to proof rests in the sound discretion of the trial court, and there is no abuse unless prejudice is shown, and new and entirely different issues are brought into the case. (Code Civ. Proc., § 470; *Crown Products Co.* v. *California Food Products Corp.*, 77 Cal.App.2d 543 [175 P.2d 861]; *Genger* v. *Albers*, 90 Cal.App.2d 52 [202 P.2d 569].) ■ The court must permit an amendment to conform to proof offered by plaintiff where no prejudice results to defendant. (*Eckart* v. *Brown*, 34 Cal.App.2d 182 [93 P.2d 212].)

In view of the fact that the complaint advised appellant that it was the defective condition of the banister which caused respondent's fall, we cannot see that she was prejudiced by further defining the term ''collapse'' in the complaint. ''Collapse'' does not necessarily mean that the banister must completely fall off. Other dictionary definitions of the word are: ''cave in,'' ''fail,'' ''to lose strength, etc. suddenly,'' ''a sudden complete failure.'' No abuse of discretion on the part of the trial court has been shown by allowing the amendment to conform to the proof.

■ A review of the record satisfied us that there is no prejudicial error and that the evidence justifies the verdict and judgment.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.