[Civ. No. 17063. First Dist., Div. Two. Mar. 21, 1957.]

MARJORY-ANN MILLER, Appellant, v. FRED W. SCHELL et al., Respondents.

Jack L. Burnam and Joseph L. Bortin for Appellant.

Barfield & Barfield, Alexander, Bacon & Mundhenk, and Herbert Chamberlin for Respondents.

STONE, J. pro tem.* — Plaintiff Marjory-Ann Miller brought this action to recover for personal injuries sustained when she stepped out of an automatic elevator in a building owned by defendants Schell. Defendant Independent Elevator

*Assigned by Chairman of Judicial Council.

Company had contracted to service the elevator. Plaintiff appeals from an adverse judgment entered pursuant to the verdict of the jury.

Respondents Schell acquired the Lippert Building in San Francisco in 1950. It had an elevator which was 30 to 40 years old. In 1951 Independent Elevator Company converted the elevator to the automatic push-button control, self-operating type. There was no automatic self-leveling device to stop the car so that its floor level was the same as that of the building. The brakes were electrically opened and mechanically closed. Under varying loads and weather conditions the brakes did not operate uniformly. There was a variance from one to four inches a great deal of the time and there could be as much as a 9-inch variance above and below floor level. Independent Elevator Company (hereinafter referred to as the elevator company) contracted with respondents Schell to oil, grease, clean and adjust the elevator weekly for the sum of $15 per month. The elevator company was instructed by respondent F. W. Schell to make any necessary repairs for an additional charge.

Appellant was employed by an architect who had offices on the third floor of the building. She had been employed by him for approximately 10 months on the date of the accident, December 7, 1953. She testified that the elevator had stopped above or below the floors a number of times when she had used it. Appellant had been on vacation since Thanksgiving and had returned to work the day of the accident. Around 1 p. m. she boarded the elevator on the third floor and pushed the first floor button. When she arrived at the first floor, the inner door (on the cage) opened. She opened the heavy outer door, which had to be pushed back against a tension spring, and looked out to see if anyone was on the other side of the door. She did not look down. She stepped out with her right foot, turning to hold the doors back. She stepped down. She did not fall, but "floundered" forward, trying to catch her balance, which she recovered when she reached the opposite wall. She put her hands on the wall.

Appellant testified that the light was not good in front of the elevator. After the accident she opened the outer door and inspected the elevator. Its floor was approximately 6 to 8 inches above the building floor.

Appellant bases her appeal upon two instructions given by the trial court which are alleged to be erroneous. The trial court instructed the jury as follows:

"I instruct you that the defendants Fred W. Schell and Dorothy M. Schell were not insurers of the plaintiff, nor of the premises or the elevator. Nor is there any presumption of negligence on the part of said defendants, merely because the plaintiff was injured. *There is no liability when the condition of the premises or elevator is obvious, or is as well known to the plaintiff as it is to the said defendants.*" (Emphasis added.)

Respondents point out that an instruction similar to the foregoing has been given and approved in certain cases, particularly that portion which provides, "There is no liability when the condition of the premises or elevator is obvious." In cases where a similar instruction has been given or approved, the accident resulted from or was caused by a condition which was permanent or fixed in its nature. In such cases, of course, the nature of the condition and whether it is dangerous or not can be determined by an ordinarily prudent person relying upon the common experiences of everyday life. The condition of a raised place in the sidewalk, a step down from one floor level to another, or a stairway without a railing, if dangerous, can normally be as readily observed by one person as another, whether he be a landlord, tenant, or invitee. The condition involved in this action was not ascertainable by observation. The testimony of the plaintiff was that all of the times she had used the elevator it had never stopped more than 3½ to 4 inches from the floor level, yet under the instruction plaintiff was charged by this obvious condition with knowledge that the elevator was likely to stop 6 to 8 inches above the floor level. An officer of defendant Independent Elevator Company, Inc., and an employee of the company testified that the elevator car stopped at varying distances above or below floor level, depending upon the load weight and weather conditions. It could stop and the doors would open at any position "from level up to nine inches above or below the floor." That would be a possible stopping range of a foot and a half. Knowing the perceptible condition in this case would not be tantamount to knowledge of the dangers inherent therein. (*Ridge* v. *Boulder Creek etc. School Dist.*, 60 Cal.App.2d 453, 460 [140 P.2d 990]; *Andre* v. *Allynn*, 84 Cal.App.2d 347, 352 [190 P.2d 949].)

The last sentence of the instruction reads in part as follows: "There is no liability when the condition of the premises or the elevator is . . . as well known to the plaintiff as it is to the said defendants." This instruction advises

the jury that if the defendant landlord has no greater knowledge of the condition than does the plaintiff, he is not liable.

■ The law, however, imposes upon the landlord a duty to use the utmost care and diligence to maintain an elevator and he cannot escape this duty and liability simply because the plaintiff is as familiar with the apparent condition of the elevator as he is. As the court stated in *Brown* v. *George Pepperdine Foundation,* 23 Cal.2d 256 at page 261 [143 P.2d 929]:

''An owner is bound to use the utmost care and diligence in the maintenance of elevators. (*Treadwell* v. *Whittier,* 80 Cal. 574, 591 [22 P. 266, 13 Am.St.Rep. 175, 5 L.R.A. 498] . . . ; *Gregg* v. *Manufacturers Bldg. Corp.,* 134 Cal.App. 147, 152 [25 P.2d 43, 1014] . . . ; 18 Am.Jur. 531, § 13.) In the fulfillment of this obligation something more than regular and frequent inspections is required. Perfunctory inspections, although regularly and frequently made, would not meet the obligation appellant owed to respondents. In order to fulfill the duty imposed upon it by law appellant was required to use due care in servicing, inspecting and maintaining the elevator and all the appliances appurtenant thereto. The instruction erroneously failed to include this requirement.''

The defendant landlord cannot equate the plaintiff's knowledge with his in determining his liability for the condition of the elevator.

■ Appellant also charges the court erred in giving the following instruction:

''I instruct you that a duty rested upon plaintiff to look where she was going and to see that which was in plain sight in front of her; that it was negligence on her part not to so use her faculties.''

Respondent points out that this instruction has been given a number of times and held not to be reversible error. In those instances where the instruction has been approved, however, there was no conflict in the evidence concerning whether or not the person involved in the accident looked or had an opportunity to look or was in any way prevented from looking or seeing. (*Huetter* v. *Andrews,* 91 Cal.App.2d 142 [204 P.2d 655].) ■ Where there is a conflict in the evidence surrounding the circumstances of the accident which enable or prevent a party to an accident from either looking or seeing, the question then becomes one to be submitted to the jury for its determination. (*Leader* v. *Atkinson,* 49 Cal.App.2d 265

[121 P.2d 759] ; *Ribble* v. *Cook*, 111 Cal.App.2d 903-907 [245 P.2d 593].)

There was evidence in this case that the elevator was equipped with a door automatically maintaining a closed position at all times, except when intentionally opened. The door was equipped with coiled springs which were at the extended or uncoiled position when the door was closed. To open the door it was necessary to pull or push backward on the door against the springs compressing them. The passenger, the plaintiff in this case, had to open the door because there was no elevator operator. There was evidence that the springs were quite resistent and that it required considerable effort to open the door. Furthermore, when opened the door did not catch or remain open of its own accord until pulled to a closed position, but rather the force of the springs was exerted on the door constantly. It is plaintiff's contention that she was so occupied with the task of opening the door and keeping it open until she could step out that she did not have an opportunity to properly or thoroughly observe the relative position of the elevator and the floor level of the building. While pushing sideways she stepped out as had been her custom over a period of several months and she expected the elevator to be within 3½ to 4 inches of the floor level. Appellant also testified that because there was no glass window or opening in the elevator door her attention to the floor was also diverted by looking about to be certain no one was entering the elevator from the lobby with whom she might collide.

Under the circumstances whether plaintiff was negligent in not looking or if she looked but did not look carefully enough was a question of fact to be determined by the jury. The instruction charged the jury as a matter of law "that it was negligence on her part not to so use her faculties." It gave the jury no opportunity to determine whether or not the plaintiff was justified in light of the evidence in looking in the manner in which she testified she did or in not seeing the position of the bottom of the elevator with reference to the floor level.

Respondents urge that the errors, if any, occurring in both instructions were cured by the giving of other correct instructions. The rule applicable when conflicting instructions are given as in this case is set forth in *Spear* v. *Leuenberger*, 44 Cal.App.2d 236, wherein the court said at page 251 [112 P.2d 43] :

" 'If a single instruction omits an essential element of the cause, but is a correct declaration of the law so far as it goes,

and the omitted element is correctly given in another instruction, the omission will ordinarily be cured thereby. If, however, an essential principle of law is stated to the jury materially incorrect, this prejudicial error will not ordinarily be cured by a correct declaration of the same principle in another instruction. The giving of instructions which are contradictory in essential elements may warrant a reversal of a judgment for the reason that it is impossible to determine which charge controlled the determination of the jury.' (*Soda* v. *Marriott*, 118 Cal.App. 635 [5 P.2d 675] ... see also *Akers* v. *Cowan*, 26 Cal.App.2d 694 [80 P.2d 143] ...)''

(See also *Rackson* v. *Benioff*, 111 Cal.App.2d 124, 129 [244 P.2d 9].)

Judgment is reversed.

Dooling, Acting P. J., and Kaufman, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 15, 1957.