[Civ. No. 9030.   Third Dist.   Apr. 1, 1957.]

LEE R. SMITH, Appellant, v. WILLIAM MAKAROFF, Respondent.

Dreyfus & McTernan, Francis J. McTernan, Francis J. McTernan, Jr., and Geary, Dreyfus, McTernan & Keller for Appellant.

Lamb & Hoge for Respondent.

WARNE, J. pro tem.*—Plaintiff brought this action against the defendant, Dr. William Makaroff, to recover damages for alleged malpractice. Plaintiff alleges in his complaint that by reason of negligent examination, diagnosis and treatment, defendant failed to discover that plaintiff was suffering from active tuberculosis, and that due to such negligence appellant failed to get, and was deprived of, timely treatment for said condition, and as the proximate result thereof, the disease was aggravated, the period of the treat-

---

*Assigned by Chairman of Judicial Council.

ment and cure was extended and the resultant permanent disability was increased.

Appellant had been a miner by occupation for some years. He had been employed as such commencing September, 1952, by the Sonoma Quicksilver Mines, Inc., which operated an underground quicksilver mine near Guerneville in Sonoma County. In October, 1952, appellant submitted himself to an X-ray examination of his chest by the Sonoma County Tuberculosis and Health Association. This X-ray showed no evidence of active tuberculosis on the date of examination.

Dr. Makaroff was a physician and surgeon in general practice at Guerneville. Commencing in 1942 or 1943 it was the custom of the Sonoma Quicksilver Mines, Inc., on hiring a miner, to send him to Dr. Makaroff for a chest X-ray and limited examination, the purpose being to have a record available for the protection of the mining company in the event disputes subsequently arose concerning the physical condition of the miner at the time he began working for the company. Pursuant to this custom, the company sent plaintiff to Dr. Makaroff on March 7, 1953. Dr. Makaroff did not examine plaintiff, but a chest X-ray was taken by the office nurse. Plaintiff testified that a few days later the mine foreman orally reported to him that the X-ray was negative. The medical experts agreed that this X-ray did not show any indication that plaintiff had tuberculosis at that time.

Plaintiff testified that, beginning in January or February of 1953, he had developed a cough and had been feeling below par, and as time went on "began to lose weight, and ran a temperature" and had a "general run-down, tired feeling"; that these symptoms gradually increased, and although he continued in his employment as an underground miner, in July, 1953, he sought medical attention. Thus, on July 24, 1953, he again went to the defendant's office. Plaintiff related his symptoms to the defendant, including those mentioned above and in addition told defendant that he had a pain in his chest. He said that respondent examined him but took no X-ray of his chest nor made any laboratory tests; and defendant told him that he had sinus trouble and bronchitis which caused a nasal drip to his throat and inflammation in his bronchial tubes.

Plaintiff further testified that defendant administered a shot of penicillin and made an appointment for him to return on July 29, 1953. Defendant did not suggest that he lay off his job. He continued to work until July 28, 1953,

when he gave up, because he was unable to continue. Plaintiff returned to defendant's office on the 29th when an additional shot of penicillin was administered and on subsequent visits until August 10, 1953, when nose drops, cough syrup and more penicillin shots were prescribed.

On August 10th plaintiff's weight was almost 30 pounds below normal and he was worried about his chest. At plaintiff's request defendant personally took an X-ray of plaintiff's chest and the office nurse took an electrocardiogram reading of his heart. Two days later, on August 12, 1953, plaintiff saw defendant again by appointment and was informed that he had examined the film of August 10th and that there was nothing abnormal in the chest. Defendant requested that plaintiff return on Saturday, August 15, 1953, and on that date he advised plaintiff to return to work on the following Monday, that is, on August 17, 1953.

After working on August 17th and a short time on the 18th he was too tired to continue. He then left work and consulted Dr. Harding Clegg of Santa Rosa, who, upon fluoroscopic and X-ray examination of plaintiff's chest and laboratory test, positively diagnosed a condition of active pulmonary tuberculosis. This physician recommended extensive hospitalization. Plaintiff was hospitalized from August 28, 1953, to January 19, 1955, and could not return to work until July, 1955.

Plaintiff further testified that after his visit to Dr. Clegg, he visited defendant in his office on August 21, 1953, and that during this visit he told defendant the results of his visit to Dr. Clegg; that defendant, at his request, then examined in his presence the chest films taken in defendant's office in March, 1953, and on August 10, 1953, and as to the August film defendant said it showed "quite a bit" of tuberculosis and that it was "too bad that nurse didn't catch it; I am going to have to speak to her because she can't read a wet X-ray." As to the chest film taken in defendant's office in March, he said: "Yes, there it is; it is just getting started; it is too bad we didn't catch it then; I will have to talk to the nurse; . . . very hard for anybody to read a wet X-ray."

As noted, the foregoing statement of the case is based upon plaintiff's evidence, in the main. It has been adopted to show plaintiff's theory of the case and also the theory upon which the case was tried. A careful reading of the record in the case discloses that at no time during the trial did plaintiff

658

contend, nor did he allege in his complaint that the defendant in any manner caused plaintiff's tuberculosis. Plaintiff contends that the reliance by the respondent upon the nurse's reading and interpretation of the X-ray films constituted negligence; that this negligence was the proximate cause of the failure to diagnose tuberculosis in March, 1953, and July, 1953, and thus the proximate cause of aggravating the tubercular condition suffered by plaintiff.

Without detailing the evidence adduced by the defendant, it is sufficient to state that his testimony was in conflict with plaintiff's in many material respects, and that other witnesses called by the defendant gave testimony in conflict with plaintiff's case.

The jury returned a verdict in favor of defendant and judgment was entered accordingly. Plaintiff appeals from the judgment.

The errors claimed on this appeal are that one instruction was erroneous and that there was an ''over emphasis'' in other instructions relating to the burden of proof.

■ The court instructed the jury at the request of the defendant as follows:

''Unless you find from a preponderance of the evidence that the tuberculosis from which the plaintiff, Lee R. Smith, is alleged to have suffered or from which he is now suffering was proximately caused by the negligence of the defendant, William Makaroff, if any, the plaintiff cannot recover and your verdict must be in favor of defendant.''

Since this instruction found no support either in the pleadings or the evidence, the giving of it constituted prejudicial error. (*Miller* v. *Peters,* 37 Cal.2d 89, 95 [230 P.2d 803]; *Finley* v. *City & County of San Francisco,* 115 Cal.App.2d 116 [251 P.2d 687]; *Soda* v. *Marriott,* 118 Cal.App. 635 [5 P.2d 675]; *Gladstone* v. *Matson Nav. Co.,* 124 Cal.App.2d 493 [269 P.2d 37].) The fact that the jury were fully and correctly instructed elsewhere and also specifically that, ''if negligence on defendant's part has been a proximate cause of aggravating a previously existing disability suffered by the plaintiff, that effect should be considered . . . in fixing damages'' if their decision on the question of liability required them to fix damages, in effect was only to create a conflict in the instructions. ■ The giving of conflicting instructions on a material point is error. (*Finley* v. *City & County of San Francisco, supra,* and cases cited therein.) ■ Defendant attempts to justify the giving of the erroneous in-

struction on the ground that it is simply "a tie-in with the allegations of the complaint." The instruction says that unless the jury found that the tuberculosis was proximately caused by the negligence of the defendant, the verdict must be in favor of defendant. Its meaning is clear and unambiguous and, obviously, does not "tie-in" with the allegations of the complaint. The complaint alleged aggravation of plaintiff's condition, not that the defendant caused plaintiff's tuberculosis. The jury were permitted to bring in a verdict based upon a matter not within the issues framed in the complaint or tried by the parties, and we feel the plaintiff necessarily suffered prejudice. (*Miller* v. *Peters, supra*; *Davenport* v. *Stratton,* 24 Cal.2d 232, 254 [149 P.2d 4]; *Hedding* v. *Pearson,* 76 Cal.App.2d 481 [173 P.2d 382]; *Aurenz* v. *Los Angeles Ry. Corp.,* 19 Cal.App.2d 401 [65 P.2d 910]; *Scandalis* v. *Jenny,* 132 Cal.App. 307 [22 P.2d 545].)

Since the judgment must be reversed for the reasons above stated, we do not consider it necessary to discuss plaintiff's contention that there was an "over emphasis" in other instructions relating to the burden of proof.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 29, 1957.