[Civ. No. 22735. Second Dist., Div. Two. June 9, 1958.]

EDWARD CLYDE LEWIS et al., Plaintiffs and Appellants, v. CHARLES W. FRANKLIN et al., Respondents; ERNEST L. JOHNSON, Cross-defendant and Appellant.

178

Frank W. Woodhead, Robert E. Morrow, Reed, Callaway, Kirtland & Packard and Henry F. Walker for Appellants.

Wyman & Finell, Saul Grayson, and Mariana VanDerhoof for Respondents.

FOX, P. J.—This case arises out of a collision between two trucks and semitrailers. The plaintiffs are Lewis, the driver of one of the trucks, and Advance Truck Company, his employer. The defendants are Franklin, the driver of the second truck, and Bayard Industries, his employer. Bayard Industries filed a cross-complaint, naming as cross-defendants Lewis, Advance Truck Company, and Johnson, a second employee of Advance Truck Company who was driving another company truck behind Lewis when the accident occurred. The jury returned a verdict for Bayard Industries on the cross-complaint, and judgment thereon was entered accordingly.[1] The motion of the cross-defendants for judgment notwithstanding the verdict was denied (their motion for directed verdict having been denied previously). Plaintiffs (Lewis and Advance Truck Co.) have appealed from the judgment in favor of defendants on the complaint, and the cross-defendants (Lewis, Advance Truck Co. and Johnson) have appealed from the judgment against them on the cross-complaint and from the order denying their motion for judgment notwithstanding the verdict.

The accident occurred at about 10:30 p.m. on January 12, 1955, at the intersection of Highway 65 and James Road in Kern County, California. Highway 65 is a two-lane highway

---

[1]Although the verdict and judgment make no reference to the complaint, we will treat them as being in favor of defendants for the purposes of this appeal.

running north and south. James Road intersects it from the east but does not continue on the west—the intersection is thus in the form of a "T." It was dark at the time of the accident and there was no lighting in the area except for the lights of the three vehicles here involved. Lewis, in a 55-foot truck and semitrailer, was traveling south on Highway 65. He was being followed in a similar truck operated by Johnson. Franklin, in a 58-foot truck and semitrailer weighing a total of approximately 71,000 pounds, was also traveling south on Highway 65. Approximately 600 feet before reaching the intersection Lewis saw the sign indicating the James Road turnoff and began slowing down; he had been traveling 30 to 35 miles per hour. In the meantime Franklin had approached the two trucks from the rear, and he began to pass them on the left side of the highway. Lewis slowed down to 20 or 25 miles per hour as he approached James Road. As Franklin began to draw alongside Lewis, the latter commenced his left turn onto James Road. Franklin was unable to avoid striking the Lewis truck and the two trucks collided at the intersection and skidded into the field east of Highway 65 and south of James Road.

Lewis testified that about 300 feet from the intersection he put up his turning signal device and put on his brakes, thus lighting up his stop lights; that he saw Johnson through his mirrors about 400 or 500 feet behind; that he saw no other vehicle; that he last looked in the mirrors when about 50 feet from the intersection, at which time he saw only one set of lights about 200 feet behind, which he believed to be Johnson's; that as he was turning at the intersection and just a split second before being hit he heard an engine noise; that he did not hear any horn nor see any flickering of headlights.

Johnson testified that he was driving about 600 feet behind the Lewis truck; that when Lewis passed the sign 600 feet from the intersection he began to slow down; that 300 feet from the intersection the stop lights on the Lewis truck came on and the arm signal was up indicating a left turn was to be made; that when about 200 or 250 feet from the intersection he heard a noise at the side of his truck and, looking in that direction, he saw a truck alongside; that he put on his brakes and moved closer to the right side of the road; that the truck which passed him was traveling about 60 miles per hour; that it kept up that approximate speed and collided with the Lewis truck at a speed of 50 to 55 miles per hour; that he was 200 feet behind the Lewis truck when the other truck passed him; that he never saw the Franklin truck before it was passing

him; that he never heard any horn signal nor saw any flickering lights in his windshield or mirrors.

Franklin testified that he began to pass the Johnson truck about 1,200 feet from the intersection, although he did not know there was any intersection ahead at the time; that he did not observe any sign on the right side of the road indicating an intersection ahead because he was passing the Johnson truck in the area where the sign was situated; that before passing Johnson he flickered the headlights of his truck from low beam to high beam and back to low beam; that upon flickering his lights he observed that the two trucks ahead of him commenced slowing down; that when he pulled abreast of Johnson he observed that the distance between the front of the Johnson truck and the rear of the Lewis truck was only about 75 or 80 feet; that there was not sufficient clearance to pull between the two trucks; that because of this and because the trucks were slowing down and there was no oncoming traffic, he continued to pass the Lewis truck; that the Lewis truck began to pull to the left about 80 feet from the intersection; that for the first time he realized that there was an intersection ahead; that at this time he was traveling about 40 miles per hour and was about 15 feet behind the Lewis truck; that Lewis did not at any time give any signal indicating an intention to turn left; that upon observing the Lewis truck moving to the left he sounded his horn and applied his brakes; that he moved to the left and went over on the shoulder of the highway as far as he could; that despite the fact he flickered his lights and sounded his horn the Lewis truck continued to cross the center line; that when it was about 20 feet from the intersection the Lewis truck made a sharp turn to the left and the two trucks collided.

A highway patrol officer testified that after the accident Lewis stated that as he was preparing to turn left he looked in his rearview mirror and saw another truck coming up from behind and thought that it was the truck which was traveling with him. The officer also testified that he observed a skid mark 162 feet in length leading to the point of impact. This mark was partially on the dirt and improved shoulder and partly on the paved portion of the highway. The officer was unable to determine the speed of the vehicle from this skid mark. There was a distance of approximately 117 feet from the point of impact to the place where the rear end of the Franklin truck came to rest (and about 175 feet to the front end). Photographs taken after the accident revealed that the

signal device on the Lewis truck was in the ''down'' position; however, Johnson testified that ''the impact was heavy enough to knock the signal arm handle out of its notch.''

■ Appellants' initial contention is that their motions for directed verdict and judgment notwithstanding the verdict on the cross-complaint should have been granted. This contention is without merit. ■ A defendant's motion for judgment notwithstanding the verdict ''may properly be granted only when, disregarding conflicting evidence and indulging in every legitimate inference which may be drawn from plaintiff's evidence, the result is a determination that there is no evidence sufficiently substantial to support the verdict.'' (*Devens* v. *Goldberg*, 33 Cal.2d 173, 177-178 [199 P.2d 943]; *Champion* v. *Bennetts*, 37 Cal.2d 815, 820 [236 P.2d 155].) ■ And a motion for directed verdict must be denied if there is any evidence to sustain plaintiff's case. (*Trainor* v. *Maus*, 126 Cal.App.2d 295, 301 [271 P.2d 957], and cases cited therein.) ■ In the instant case there was substantial evidence which, if believed by the jury, would support a verdict in favor of respondent Bayard Industries. Franklin's testimony indicated that Lewis was negligent in failing to give a signal of his intention to turn left and in failing to notice the approach of Franklin's vehicle on his left. The fact that this testimony was contradicted by the testimony of Lewis and Johnson is of no importance when considering the propriety of denying motions for directed verdict and judgment notwithstanding the verdict. Appellants argue that the evidence shows without contradiction that Franklin was violating Vehicle Code, section 530, subdivision (b)(2) (driving on the left side of the highway within 100 feet of an intersection). Even conceding that this was so, whether such violation was a proximate cause of the accident was a question for the jury to determine. The jury reasonably could conclude that such violation was not the proximate cause of the collision. Appellants also argue that the evidence shows that Franklin was exceeding 40 miles per hour at the time of the accident, thus establishing a violation of Vehicle Code, section 515.[2] But Franklin testified that at no time did he exceed 40 miles

[2]At the time of the accident here involved Vehicle Code section 515 read as follows:

''(a) No person shall operate upon any highway any of the following vehicles when equipped entirely with pneumatic tires at any speed in excess of 40 miles per hour:

''(1) Any motor truck and trailer.

''(2) Any motor truck alone or truck tractor with semitrailer having

per hour. This evidence was sufficient to support an implied finding by the jury on this question in favor of Bayard Industries. It is therefore clear that appellants' motions were properly denied.

Appellants contend that certain instructions given by the court were prejudicially erroneous, confusing and misleading. We have concluded that their position is sound.

 The court gave the following instruction:

"The Vehicle Code of the State of California clearly places a duty upon the driver who contemplates turning upon the highway to first ascertain if such movement can be safely made, with reference to both front and rear, and if not to wait until it can be made in safety."

By this instruction the jury was told that before making the turn here in question, Lewis had to "ascertain" that it could be made in safety. The effect of this was to place upon Lewis the absolute duty to determine before turning that the turn could be made with safety. This does not represent a correct statement of the law. In *Spear* v. *Leuenberger*, 44 Cal. App.2d 236 [112 P.2d 43], the court had before it an instruction very similar to the one here involved. There the instruction told the jury that if the defendant made a left turn "without knowing that such movement could be made with reasonable safety," then he was guilty of negligence as a matter of law. In holding that this instruction was prejudicially erroneous, the court stated (p. 247) : "We do not understand it to be the rule that a person is required to know that the turning movement can be made with safety. All that is required is that he take the precautions which a reasonably prudent person would take under the circumstances reasonably appearing to him at the time." This principle was also announced in *Sunseri* v. *Dime Taxi Corp.*, 57 Cal.App.2d 926, 933 [135 P.2d 654], and *Chambers* v. *Spada*, 133 Cal.App.2d 231, 236 [283 P.2d 1067].

The Vehicle Code provision which is referred to in the instruction now under consideration is section 544. That section provides in part that "no person shall turn a vehicle from a direct course or move right or left upon a highway unless and until such movement can be made with reasonable safety.

a gross weight, of vehicle and load or of such vehicles and load of 25,000 pounds or more. . . .''
Since the date of the accident here involved, the provisions of section 515 have been materially altered.

. . ." "This provision does not require the driver to know that a turn can be made with safety but only that he must exercise reasonable care. . . ." (*Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 657 [320 P.2d 500]; see also *Washam* v. *Peerless Automatic Staple Machine Co.*, 45 Cal.App.2d 174, 177 [113 P.2d 724].) This interpretation of section 544 should have been made clear to the jury. The instruction which was given does not even use the word "reasonable"; it fails to make clear that the duty of care imposed upon Lewis was something less than an absolute one. Under such circumstances the giving of the instruction constitutes prejudicial error. (*Spear* v. *Leuenberger, supra.*)

Respondents rely upon *Young* v. *Cerrato*, 2 Cal.App.2d 421, 424 [37 P.2d 1063], in support of the instruction here involved. In fact, the language in the instruction was taken from that opinion. While the language used in that case might be perfectly clear to members of the legal profession, such language could easily mislead members of a jury who are not accustomed to reading into it the so-called "reasonable man test" which is to be applied in negligence cases. The Young case was referring to the provisions of section 130, subdivision (a) of the California Vehicle Act (which was the predecessor of Veh. Code, § 544). In *Ruperto* v. *Thomas*, 113 Cal.App. 523 [298 P. 851], it was pointed out that the language of section 130, subdivision (a), must receive a reasonable construction. The court stated (p. 526): "The language . . . should be construed to mean that the driver of a vehicle upon a public highway, before starting, turning or stopping such vehicle must use such precaution as would satisfy a reasonably prudent person acting under similar circumstances that he could do so safely." It is thus clear that the "reasonable man test" was read into section 130, subdivision (a), just as it is now read into section 544 (*Butigan* v. *Yellow Cab. Co., supra*). An instruction to a jury concerning Vehicle Code, section 544 must make it clear that the driver who is about to turn must exercise such care as would a reasonably prudent man under similar circumstances, no more and no less. The language in the Young case is not appropriate in such an instruction unless the above qualification is included. (See note preceding BAJI[3] No. 142.)

Respondents apparently argue that the instruction under

[3]Book of Approved Jury Instructions (California Jury Instructions, Civil), 3d revised edition, West Publishing Company, 1943.

consideration was saved because BAJI Number 142[4] was given. However, BAJI Number 142 was given in connection with, and immediately following, an instruction which used the exact language of Vehicle Code, section 544. These two instructions were given before the instruction in question, and several other instructions intervened. It is clear from what we have already said that an instruction in the language of section 544 should be followed by a qualifying instruction such as BAJI Number 142. The two instructions to that end were correct. But the instruction in question, which was far removed from the other two instructions, was incorrect because it was given without qualification. Since this instruction in effect imposed upon the driver an absolute duty to determine that his turn could be made with safety, it was in conflict with the other two above mentioned instructions. ▮ It is well settled that the giving of conflicting or contradictory instructions on a material point is error. (*Smith* v. *Makaroff,* 149 Cal.App.2d 655, 658 [308 P.2d 912] ; *Finley* v. *City & County of San Francisco,* 115 Cal.App.2d 116, 122 [251 P.2d 687], and cases cited therein.) ▮ The giving of an erroneous instruction is not cured by the giving of other correct instructions where the effect is simply to produce a clear conflict in the instructions and it is not possible to know which instruction was followed by the jury in arriving at a verdict. (*Eslick* v. *Leach,* 135 Cal.App.2d 455, 457 [288 P.2d 38] ; *Akers* v. *Cowan,* 26 Cal.App.2d 694, 699 [80 P.2d 143], and cases cited therein; see also *Miller* v. *Schell,* 149 Cal.App.2d 346, 351-352 [308 P.2d 445].) ▮ In the instant case it is clear that the error in the instruction in question was not cured by the other instructions relating to the same subject.

Respondents also seem to argue that the phrase "safely made" in the instruction under consideration was the equivalent of "reasonably safely made." They rely upon *Popejoy* v. *Hannon,* 37 Cal.2d 159, 168 [231 P.2d 484], and *Jones* v. *Bridges,* 38 Cal.App.2d 341, 345-346 [101 P.2d 91]. Both of those cases upheld instructions where the word "reasonable" was omitted. But the omission was not approved; in

[4] "'The words just quoted from the Vehicle Code, namely, that 'no person shall turn a vehicle unless and until such movement can be made with reasonable safety,' do not mean that the driver of a motor vehicle, before making a turn, must know that there is absolutely no possibility of accident. They mean that before starting to turn a vehicle on a public highway, and while making the turn, the driver of the vehicle must use such precaution as would satisfy a reasonably prudent person, acting under similar circumstances, that the turn can be made safely.'"

each case it was held merely that the omission could not have misled the jury.

The instruction in the instant case, as previously pointed out, in effect imposed on Lewis a duty greater than that of reasonable care under the circumstances in turning safely. The failure to use the word "reasonable" anywhere in the instruction served to accentuate this error and made it all the more likely that the jury would be misled by the instruction.

█ Another instruction given by the court recited the pertinent portion of Vehicle Code, section 515, as it existed at the time of the accident here involved:

"Speed Law Based on Weight and Tire Equipment. (a) No person shall operate upon any highway any of the following vehicles when equipped entirely with pneumatic tires at any speed in excess of 40 miles per hour:

(1) Any motor truck and trailer.

(2) Any motor truck alone or truck tractor with semi-trailer having a gross weight, of vehicle and load or of such vehicles and load of 25,000 pounds or more."

Immediately following the above instruction the court gave this instruction:

"The speed at which a vehicle travels upon a highway, considered as an isolated fact and simply in terms of so many miles an hour, is not proof either of negligence or of the exercise of ordinary care.

"Whether that rate of speed is a negligent one is a question of fact, the answer to which depends on all the surrounding circumstances.

"The basic speed law of this state, as provided by Section 510 of our Vehicle Code, is as follows:

" 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'

"A violation of this basic rule is negligence.

"From the law just stated to you, it follows that although a vehicle is being driven upon a highway at a speed not greater than the prima facie limit fixed by law, such speed, nevertheless, might be negligent in the then existing circumstances; also, although a vehicle is being driven upon a highway at a speed in excess of the prima facie limit, such speed, nevertheless, might be within the exercise of ordinary care under the conditions then existing."

Taken together these two instructions gave the jury the impression that (1) proof that Franklin was traveling in excess of 40 miles per hour did not, by itself, establish negligence on his part, and (2) speed in excess of 40 miles per hour in a loaded truck and semi-trailer weighing more than 25,000 pounds might be "within the exercise of ordinary care" under the circumstances. The law in this regard is otherwise, and the concomitance of these instructions was misleading. "The driving of a loaded tractor truck and semitrailer, weighing 25,000 pounds or more at a speed greater than 40 miles per hour is negligence *per se*." (*Fortier Trans. Co.* v. *Union Packing Co.*, 96 Cal.App.2d 748, 752 [216 P.2d 470] ; see also *Wood* v. *Moore*, 64 Cal.App.2d 144, 149 [148 P.2d 91].)[5] The reason for this rule is adequately explained in the Fortier case. The evidence disclosed that Franklin's equipment and load weighed 71,000 pounds. There was also evidence that he was traveling in excess of 40 miles per hour. If the jury believed this testimony, then Franklin was guilty of negligence as a matter of law, and it was error to instruct otherwise. It was not made clear to the jury that, regardless of what the prima facie speed limit might have been in the area where the accident occurred, Franklin was nevertheless negligent if he was driving in excess of 40 miles per hour.

Respondents argue that the court did instruct the jury that violation of the provisions of the California Vehicle Code constituted negligence *per se*. The instruction to which they refer reads as follows:

"Conduct which is in violation of provisions of the California Vehicle Code just read to you constitutes, in itself, negligence. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he or she was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable, and such as might reasonably have been expected from a person of ordinary prudence.

"In this connection, you may assume that a person of ordinary prudence will reasonably endeavor to obey the law and will do so unless causes, not of his own intended making, induced him, without moral fault, to do otherwise.

[5]It should be noted that the Legislature has changed the speed limitation in section 515 to 45 miles per hour.

"To prove that a violation of a statute, such as that charged in this case, was excusable and justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the violation resulted from causes or things beyond the control of the person charged with the violation."

After giving the instructions on speed previously discussed, the court then instructed the jury on the definition of an intersection, the requirement of a horn on a motor vehicle, the limitations concerning overtaking on the left, the failure of respondents to plead contributory negligence on Johnson's part, the impropriety of imputing Johnson's negligence to Lewis, driving on the left side of the highway near an intersection, and brake requirements. The record discloses that in none of these instructions did the court specifically mention the Vehicle Code; nor was the Vehicle Code mentioned in the instruction concerning the speed limitations on trucks with trailers. After instructing on the above mentioned subjects the court repeated the instruction which we have already quoted on the subject of speed in terms of miles per hour and the basic speed law, stating therein that "the basic speed law of this state, as provided by section 510 of our Vehicle Code, is as follows. . . ." It was then that the court gave the instruction to which respondents refer (which we will call the negligence *per se* instruction).

It is unlikely that the jury understood that the negligence *per se* instruction referred back to the instruction covering the speed limit imposed on a loaded truck and semitrailer. In the first place, the jury was instructed on a number of other subjects between the giving of these two instructions. Moreover, the instruction regarding the speed limitation on a loaded truck and semitrailer was not identified by reference to any Vehicle Code section. Yet, the negligence *per se* instruction refers to violation of "provisions of the California Vehicle Code just read to you. . . ." The Vehicle Code section "just read to" the jury was section 510, which appeared in the instruction immediately preceding the negligence *per se* instruction. It was only natural for the jury to understand that the negligence *per se* instruction referred only to section 510 mentioned in the immediately preceding instruction, and not to the other preceding instructions which did not mention any Vehicle Code section. It is thus apparent that the negligent *per se* instruction added confusion to the situation instead of clarification.

Respondents point out that the court also instructed the

jury that "the order in which the instructions are given has no significance as to their relative importance," and that "any certain sentence, or any individual point or instruction" should not be singled out to the exclusion of others. Such generalizations, however, cannot ameliorate the erroneous impressions that were conveyed to the jury.

We are convinced that the erroneous, confusing and misleading character of the instructions had a prejudicial effect on appellants' case. Therefore, there must be a new trial.

The order denying the motion for judgment notwithstanding the verdict on the cross-complaint is affirmed. The judgment is reversed.

Ashburn, J., and Herndon, J., concurred.